[No. B001819. Second Dist., Div. Five. Mar. 14, 1984.]

UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 274, AFL-CIO & CLC, Plaintiff and Respondent, v. CLOUGHERTY PACKING COMPANY, Defendant and Appellant.

COUNSEL

Pettit & Martin, Thomas P. Burke, Linda Auerbach Allderdice and Christopher A. Burrows for Defendant and Appellant.

George & Buch, Lorraine A. Reich and Cliff Fonstein for Plaintiff and Respondent.

## Opinion

**HASTINGS, J.**—This is an appeal from an order confirming an arbitration award.

In March 1969, Gerardo Zazueta was employed as a butcher by appellant Clougherty Packing Company (the Company). Sometime thereafter, Zazueta contracted brucellosis, a disease transmitted to man from animals or their by-products. Zazueta last worked for the Company in December 1972. He applied for workers' compensation benefits, and the WCAB ultimately found that he sustained a temporary total disability for the period June 15, 1972, to March 24, 1974, and a permanent disability of 17 percent. Zazueta was also placed on Social Security disability status.

Zazueta remained disabled for approximately eight and one-half years. In August 1981, he received a notice from the Social Security Administration which read in part:

"The evidence now in file indicates you are able to perform substantial gainful work and have been since July 81.

"Current evidence obtained by the Social Security Administration now discloses that you have sufficiently recovered from your impairments with no significantly [*sic*] residuals. It would appear, therefore, that your impairments are no longer severe, and that you are no longer disabled within the meaning of the law."

On September 14, 1981, Social Security issued Zazueta a "Termination Notice" informing him that the last disability payment to which he would be entitled would be for the month of September 1981.

In early September 1981, Zazueta obtained a "return to work" release from one of his treating physicians, and thereafter presented himself at the office of respondent union and informed the union's business agent, Arthur Eaton, that he was ready to return to work at the Company. Eaton noted that Zazueta appeared to have lost his seniority under article VII, paragraph 9 of the collective bargaining agreement between the union and the Company,[1] so he telephoned the union's law firm and asked whether Zazueta had a right to reinstatement in view of the length of time he had been off duty. The law firm answered in the affirmative, so Eaton contacted the

---

[1] Article VII, paragraph 9 of the agreement provides: "Absence up to eighteen (18) months due to occupational injury or illness shall not interrupt seniority rights."

Company's director of industrial relations, William Regan, and requested reinstatement for Zazueta. The Company refused to reinstate him.

Later in September 1981, Eaton and the union's attorney met with Regan and the Company's attorney to discuss the Zazueta case. Eaton gave Regan the "return to work" release for Zazueta, but according to Eaton, Regan's reply was, "No, he has been off too long and I am not going to put him back." Eaton then filed the grievance which became the subject of the arbitration proceeding involved here.

By stipulation, the parties submitted the following issues to be decided by the arbitrator:

"(1) Is the matter of Gerardo B. Zazueta arbitrable?

"(2) If so, was his seniority severed in accordance with Article VII, Paragraph 9 of the Agreement?

"(3) If the answer to question #2 is in the negative, was he returned to work status? If so, when?

"(4) What is the appropriate remedy, if any?"

With respect to issue number (1), the Company contended that the union had no standing to bring the grievance on behalf of Zazueta because he had not been a member of the union for nine years. Arthur Eaton testified that Zazueta had obtained a "Withdrawal Card" from the union, meaning that he did not pay dues but was considered to be a general member of the union, and could return to active status without payment of the usual initiation fee. The arbitrator found that Zazueta was a union member and the union had standing to arbitrate the grievance on his behalf.

The arbitrator then ruled that "Article VII, Section 9 is clearly illegal in California, since this provision places an 18-months ceiling on retention of seniority by employees whose absence is due to occupational injury or illness." He further stated that "[l]oss of seniority is equivalent to loss of employment, because the Company is free to refuse employment to a person who has no seniority." The arbitrator relied on California Labor Code section 132a, which prohibits discrimination against workers who are injured in the course and scope of employment, and on the case of *Judson Steel* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rptr. 250, 586 P.2d 564]. In *Judson Steel,* the Supreme Court interpreted a contractual clause in which an employee lost seniority if he was absent for a specified

length of time. Citing the holding of the Workers' Compensation Appeals Board, the court held that the clause violated section 132a: " 'Here the applicant was penalized solely because he missed more than twelve months of work due to an industrial injury. Accordingly, the penalty that was imposed upon the applicant was one that occurred under circumstances prohibited by Labor Code Section 132 [a].' " (22 Cal.3d at p. 664.) The court also stated: "[I]t is clear in any event that an employer may not defend a discriminatory employment practice, proscribed by Section 132a, on the basis of the provisions of a collective bargaining agreement, for a Union may no more bargain away its members' statutory rights against discrimination under the workers' compensation laws than it may bargain away its members' statutory rights against, for example, sexual or racial discrimination." (*Id.*, at p. 665, fn. 5.)

In his decision rendered on February 26, 1983, the arbitrator stated, "The undersigned feels compelled to apply the California Supreme Court doctrine to the facts of the present case." He ordered the Company to reinstate Zazueta in the same classification he held when he became disabled, and awarded him back pay from January 17, 1983 (amounting to approximately one month of backpay). Zazueta was to retain the seniority status he had acquired when he became disabled. The award provided for a review by the Company of Zazueta's work performance after one month, after which he could either be retained as a regular employee or discharged, subject to the terms of the collective bargaining agreement relating to discharge.

The union petitioned to confirm the award and the Company petitioned to vacate the award, on the grounds that the arbitrator exceeded his powers (Code Civ. Proc., § 1286.2, subd. (d)) in determining that article VII, paragraph 9 of the collective bargaining agreement was illegal and unenforceable. The court below granted the union's petition, and the Company appealed.

■ The sole grounds for setting aside an arbitration award are set forth in Code of Civil Procedure section 1286.2. The Company relies on subdivision (d) of that section which provides that the court shall vacate an arbitration award if it determines that "[t]he arbitrators exceeded their powers . . . ." The Company contends that the award must be vacated because the award was based solely on the determination of a legal issue which the parties did not submit to the arbitrator. (*Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960 [136 Cal.Rptr. 345]; *Pac. Fire etc.* v. *Bookbinders' Union* (1952) 115 Cal.App.2d 111 [251 P.2d 694].)

 The union contends that the legality of article VII, paragraph 9 of the collective bargaining agreement was raised as an issue in the arbitration, and included within the first submitted issue as to whether or not the dispute was arbitrable. The record supports the union's position.

Both parties submitted posthearing briefs in which the *Judson Steel* case is discussed. The Company's argument was twofold: (1) *Judson Steel,* decided in 1978, was not made retroactive and is therefore not relevant to this case because Zazueta's last day of work was December 20, 1972; and (2) *Judson Steel* was factually distinguishable from the present case. In its posthearing brief, the union discussed *Judson Steel* at length, calling it "[t]he key case relied upon by [the] grievant." The union noted that the contractual provision at issue in this case is identical to the provision relied upon by the employer in *Judson Steel.*

In support of its opposition to the Company's petition to vacate the award, the union submitted the declarations of its attorney, Dan F. Trammell, and the arbitrator, Lloyd H. Bailer. In his declaration, attorney Trammell stated in part:

"4. As early as February or March, 1982, I indicated to Donald S. Prayzich, representative for Clougherty Packing Company, that the *Judson Steel* case would be an issue at the arbitration. Mr. Prayzich stated on several occasions that he felt the *Judson Steel* case was 'not relevant' but we agreed that this would be a matter for the arbitrator to decide.

"5. On more than one occasion, during telephone conversations with Mr. Prayzich, I indicated that the Union would be relying on its defense primarily on the basis of *Judson Steel.*

"6. At the arbitration hearing, before we were 'on the record' the parties engaged in lengthy discussion concerning the bearing of *Judson Steel* on the grievant's case. The Company maintained that the grievance was not arbitrable under Article VII, Paragraph 9 and that the grievant had lost his seniority and his right to be heard on the matter. The Union maintained that Article VII, Paragraph 9 was void as against the declared public policy of the State of California as defined in Labor Code, Section 132(a) [*sic*], and the Supreme Court's decision in *Judson Steel.* The issue was submitted to the arbitrator as encompassed in stipulated question #1, 'Is the matter of Gerardo B. Zazueta arbitrable?'

"7. It was clearly the intent of the parties that the arbitrator was being called upon to adjudicate the legality of Article VII, Paragraph 9 in light of

the *Judson Steel* decision. It was also clearly understood by the parties that the arbitrator would be deciding the case on the basis of all evidence before him, including a copy of the *Judson Steel* decision, Union's Exhibit #2 thereto."

In his declaration, arbitrator Bailer stated that in his opinion, the first submitted issue dealing with arbitrability was a "two-prong" issue, the first prong dealing with Zazueta's standing to sue or be represented by the union because of his long absence, and the second prong involving "the question of the legality of Article VII, Paragraph 9." According to the arbitrator, the applicability of *Judson Steel* was very much in issue: "The Union contended that in light of the California Supreme Court's decision . . . that contract provision was unlawful and void as against Labor Code, Section 132(a) [*sic*] and public policy as enunciated by the Court in *Judson Steel.* The Company's position on *Judson Steel* was that it was irrelevant and had no retroactive effect."

Bailer concluded, "It was clear to me as the arbitrator, that it was within my power to render an opinion and award based upon all the facts and evidence (including a copy of the *Judson Steel* case which I found relevant) presented to me at the arbitration."

These declarations reveal two significant points. First, it is evident that both the Company and the union knew that the applicability of *Judson Steel,* and therefore the legality of article VII, paragraph 9, would be an issue in the arbitration. If the Company objected to this issue being raised because it was beyond the scope of the arbitration, it should have raised the point at the time. Even in its posthearing brief, the Company confined its discussion of *Judson Steel* to alleged factual distinctions and a fallacious argument concerning retroactivity. The Company cannot now complain that the arbitrator decided an "unsubmitted" issue when it stood by and allowed the issue to be submitted. The Company was well aware that the *Judson Steel* issue would be addressed by the arbitrator, but it objected to this only after it was confronted with an adverse award.

Further, it was the opinion of the arbitrator that he could not resolve the controversy without addressing the *Judson Steel* issue. ■ Code of Civil Procedure section 1283.4 provides that an arbitration award "shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." The determination of which issues are actually necessary to the ultimate decision is a question of fact to be resolved by the arbitrator. (*Lesser Towers* v. *Roscoe Ajax Const. Co.* (1969) 271 Cal.App.2d 675, 697 [77 Cal.Rptr. 100]; *Jones*

v. *Kvistad* (1971) 19 Cal.App.3d 836 [97 Cal.Rptr. 100].) ▮▮▮ Here, the arbitrator correctly concluded that the controversy could not be resolved without a consideration of relevant statutory and case law.

The record supports the Union's position that the legality of article VII, paragraph 9 was in fact an issue which was submitted to the arbitrator for resolution. Therefore, the arbitrator did not exceed his power in resolving that issue.

The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.