[No. A027072. First Dist., Div. Three. July 30, 1986.]

PACIFIC CROWN DISTRIBUTORS, Plaintiff and Respondent, v. BROTHERHOOD OF TEAMSTERS AND AUTO TRUCK DRIVERS, LOCAL 70, Defendant and Appellant.

---

## COUNSEL

Van Bourg, Weinberg, Roger & Rosenfeld and David A. Rosenfeld for Defendant and Appellant.

Littler, Mendelson, Fastiff & Tichy, George J. Tichy II and Patricia A. Shepherd for Plaintiff and Respondent.

---

## OPINION

**WHITE, P. J.**—Defendant and appellant Brotherhood of Teamsters and Auto Truck Drivers, Local 70, appeals an order of the Alameda County Superior Court which vacated a labor arbitration decision awarding backpay benefits to union member Clarence Lahey. The trial court found (1) the arbitrator's award was procured by corruption, fraud and other undue means, and (2) the arbitrator exceeded her authority by granting the remedial measure.

I.

During trial appellant chose not to rebut any of the facts as stated by respondent Pacific Crown Distributors, accordingly, we have relied on those same facts.

Clarence Lahey was employed by respondent from August 8, 1956, to December 4, 1982, as a truck driver and was represented by appellant union.

Because of a substantial number of absences from work in May and June, 1982, Lahey was notified of possible termination on July 12, 1982. A subsequent agreement of July 21, 1982, between appellant, respondent and Lahey resulted in his receiving "one more chance." Attendance did improve for awhile until September 1982, when the pattern of absenteeism started again, and on December 4, 1982, a decision to terminate his employment took effect.

At the time of discharge, the collective bargaining agreement between respondent and appellant, covering the period from August 1, 1982, to July 31, 1985, was not yet finalized and accepted by the union. One provision of the tentative agreement dealt with employee discharge and the grievance procedure. The prior agreement's grievance section 9.2(1) read: "In all cases except proven theft, proven intoxication or proven gross insubordination, each having occurred on the job, an employee to be discharged shall be allowed to remain on the job without loss of pay unless and until the discharge is sustained under the grievance procedure. . . ." The facts, as stated by respondent and accepted by the trial court show some disagreement between the parties as to whether the text of section 9.2(1) was an accepted part of the agreement at the time of Lahey's termination.[1]

The arbitration hearing dealing with Lahey's dismissal was held on May 24, 1983, before Arbitrator Barbara Chvaney. Both appellant and respondent "stipulated the *only* issue submitted to the arbitrator was whether or not the discharge of Clarence Lahey was in accordance with the collective bargaining agreement, *and if not,* what shall be the remedy." (Italics added.) While no mention of section 9.2(1) was made by appellant during the hearing, its posthearing brief raised the issue that section 9.2(1) had been violated in Lahey's case since he was not allowed to remain on the job until

---

[1]Briefly, respondent supplies this version of the events behind the contested inclusion of section 9.2(1):

1. July 30, 1982: appellant and respondent agreed to delete section 9.2(1) from the new agreement;

2. September 23, 1982: appellant union notified respondent that the union members ratified all but a few provisions of the proposed agreement, section 9.2(1) *was not* among the unaccepted terms;

3. January 18, 1983: appellant questioned respondent as to why the agreement draft did not include section 9.2(1);

4. January 24, 1983: respondent reminds appellant of the agreement of July 30, 1982, and the subsequent communication of September 23, 1982;

5. February 4, 1983: in a meeting, appellant states its belief that among the unratified provisions (as of Sept. 23, 1982) was the deletion of section 9.2(1). Respondent discloses its belief in the effective deletion of section 9.2(1) as confirmed on September 23, 1982, and further states its belief that section 9.2(1) was not in effect on December 4, 1982, when Lahey was terminated. Appellant and respondent then made an agreement whereby respondent agreed to reinsert section 9.2(1) and appellant would not apply section 9.2(1) to Lahey's termination and arbitration hearing.

the grievance procedure was finished. Relying on the February 4, 1983, agreement, respondent did not mention section 9.2(1) at any point of the hearing or in its posthearing brief.

On August 23, 1983, Arbitrator Chvaney's opinion and decision was issued. She decided in "Decision 1" that Lahey's discharge was in accordance with the collective bargaining agreement, and in "Decision 2" found that because of the violation of section 9.2(1), Lahey was to be awarded back pay from the respondent for the period from December 4, 1982 to the date of the decision.

## II.

■■ Appellant's first contention is that the trial court erroneously vacated the arbitrator's backpay award to Lahey. The trial court found that in making the award, the arbitrator exceeded her power by going beyond the scope of the issue submitted to her, causing substantial prejudice to respondent. Appellant argues the award was within the scope of the arbitrator's power and that the language of the issue submission was "broad enough" to encompass the issue of section 9.2(1). We disagree.

■■ At the outset, we are mindful of the great deference courts give to arbitrators and their decisions and also of the general rule that the merits of an award are not subject to review by the superior court. (*Hirsch* v. *Ensign* (1981) 122 Cal.App.3d 521, 529 [176 Cal.Rptr. 17]; *Meat Cutters Local No. 439* v. *Olson Bros.* (1960) 186 Cal.App.2d 200, 203-204 [8 Cal.Rptr. 789].) ■■ ■■ ■■ ■■ ■■ Such deference, however, is not absolute; it is well settled in both the federal and state jurisdictions[2] that an agreement to arbitrate is a contractual matter, and as such, a party cannot be required to arbitrate an issue or grievance it has not agreed would be subject to arbitration. (See, e.g., *Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574, 582 [4 L.Ed.2d 1409, 1417, 80 S.Ct. 1347]; *O'Connor Co.* v. *Carpenters Union No. 1408* (9th Cir. 1983) 702 F.2d 824, 825; *Alpha Beta Co.* v. *Retail Store Emp. U. Local 428* (9th Cir. 1982) 671 F.2d 1247, 1250; *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341]; *Arrieta* v. *Paine, Webber, Jackson & Curtis, Inc.* (1976) 59 Cal.App.3d 322, 329-330 [130 Cal.Rptr. 534]; *Goosen* v. *Adair* (1960) 185 Cal.App.2d 810, 816; *Jannis* v. *Ellis* (1957) 149 Cal.App.2d 751, 753 [308 P.2d 750].)

---

[2]Because this action involves a collective bargaining agreement between parties operating in interstate commerce, we exercise concurrent jurisdiction with the federal courts and are bound to apply federal substantive law. (*Dowd Bar Co.* v. *Courtney* (1962) 368 U.S. 502, 503, 512 [7 L.Ed.2d 483, 485, 489-490, 82 S.Ct. 519]; *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 486 [30 Cal.Rptr. 452, 381 P.2d 188].)

As a contractual matter between the parties involved, the arbitrator "derives his power solely from the arbitration agreement and he cannot exceed his derived powers. 'There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . [citation]' . . . . [¶] 'The powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission.'" (*Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966 [136 Cal.Rptr. 345].)

California Code of Civil Procedure section 1286.2, subdivision (d), provides that the court shall vacate the order of the arbitrator if it determines that "arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

■ The issue submitted in the present case reveals a "two step process" to be undertaken; first, the arbitrator was to decide whether or not Lahey's discharge was in accordance with the collective bargaining agreement, and, *if not,* then a determination of the remedy was to follow. To us, the language agreed upon by both parties seems clear enough, the remedy question was to be addressed only if the discharge was not in accord with the agreement.

The arbitrator's opinion and decision of August 29, 1983, states in its decision: "The discharge of Clarence Lahey was in accordance with the Collective Bargaining Agreement." Since the "first step" of the issue submitted was fulfilled, we find there was no need for the arbitrator to go on to the "remedial step." Therefore, the trial court's vacation of the award was proper under Code of Civil Procedure section 1286.2, subdivision (d).

■ While this settles the issue for us, we will go on and respond to appellant's specific arguments. Basically, the claim is that in looking for accord between the agreement and termination, the arbitrator was required to consider section 9.2(1) regardless of the issue submitted. Initially, we are compelled to note that the record shows a mutual agreement between the parties on February 4, 1983, stating that section 9.2(1) would not be raised in the arbitration hearing of Lahey. In spite of that fact, appellant *still* contends that section was inherently a part of the collective bargaining agreement as a "procedural" issue, which the arbitrator, not the court, has the power to decide. (*John Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543, 556-558 [11 L.Ed.2d 898, 908-909, 84 S.Ct. 909]; *Butchers Union* v. *Farmers Markets* (1977) 67 Cal.App.3d 905, 910-911 [136 Cal.Rptr. 894].)

Inasmuch as the February 4, 1983, agreement is part of the record, we are hard pressed to see how, even as a "procedural" issue, section 9.2(1) could be taken into consideration by the arbitrator. As previously discussed, an arbitrator derives all her power from the parties and the relevant agreement. If section 9.2(1) was not a part of the agreement (relative to Lahey), then even as a "procedural" point, the arbitrator was prevented from referring to it.

Assuming arguendo, that section 9.2(1) was properly a part of the agreement between the parties, we would still find the arbitrator exceeding the scope of her power in her consideration of it. In *United Food & Commercial Workers Union* v. *Clougherty Packing Co.* (1984) 154 Cal.App.3d 282 [201 Cal.Rptr. 183], an arbitrator was asked to decide if a particular seniority provision was arbitrable. The arbitrator answered in the affirmative but also went further by declaring the provision illegal under the labor code and existing case law. The reviewing court upheld *both* findings. The legality finding (an unsubmitted issue) was upheld since (a) both parties had clear knowledge, well in advance of the hearing, that the legality aspect would be an issue even though not formally submitted, and (b) it was the arbitrator's opinion that the underlying controversy could not be resolved without addressing the legality issue. (*Id.*, at p. 288.)

Appellant here makes a similar claim, i.e., that as a procedural point, section 9.2(1) was necessarily a part of the "controversy affecting the mutual relation of the Employee and the Union" and although not expressly stated *is* within the issue submitted. Applying the first factor of *Clougherty,* we find respondent had *no* expectation that section 9.2(1) would be addressed at the arbitration hearing in light of the February 4, 1983, agreement. This fact is borne out in the record as it shows neither party mentioned that section at any time during the hearing.

Similarly, in applying the second *Clougherty* criteria, we see no evidence that the arbitrator felt section 9.2(1) was necessary for the disposition of the issue submitted. On the contrary, the arbitrator's opinion and decision states, "To ascertain whether [Lahey's] termination was for *just cause,* the determination must be made as to whether his attendance showed substantial improvement following his reinstatement to employment pursuant to the agreement of July 21, 1982." (Italics added.) The arbitrator's discussion further states, "The company's decision to terminate him, under the circumstances, was not violative of the Collective Bargaining Agreement or the July 21, 1982 agreement," and "[d]ischarge . . . was, therefore, justified."

The discussion shows that the issue which the arbitrator focused on was whether the discharge was for "just cause." Nowhere in the arbitrator's

"Discussion" section dealing with the just cause issue is there any mention of section 9.2(1). The record shows that the first part of the arbitrator's decision was based *solely* on the record of Lahey's absenteeism. By the application of the *Clougherty* rule, we find no merit to appellant's contention that section 9.2(1) was necessarily and inherently implicated in the stated issue submitted.

■ Appellant also claims that because respondent failed to challenge appellant's raising of the section 9.2(1) issue in its (appellant's) posthearing brief, respondent waived any challenge to the arbitrator's consideration of that issue. Since "[a]rbitration is predicated on the voluntary agreement of the parties, and the arbitrators derive their powers from the agreement [citation] . . . [t]he parties may agree on further action by the arbitrators as a continuation of the original submission." (*Goosen* v. *Adair, supra,* 185 Cal.App.2d at p. 816; *Jannis* v. *Ellis, supra,* 149 Cal.App.2d at p. 753.)

As the remedy question was not addressable in Lahey's situation under any rationale, and respondent did not voluntarily agree to submit that issue separately or unconditionally, this argument is wholly without force. Were we to accept appellant's claim, we would effectively be allowing appellant to modify an arbitration agreement (a "contract") unilaterally, and further would be depriving respondent of its recourse under the law (pursuant to Code Civ. Proc., § 1286.2, subd. (d)). We refuse to allow appellant to benefit from its own wrongful act by "forcing" a modified submission upon an unconsenting party.

## III.

■ Appellant's second major contention is that the trial court erred in finding that the arbitrator's award was procured by fraud, corruption and undue means, consequently vacating it under the provisions of Code of Civil Procedure section 1286.2, subdivision (a). The controversy arises from appellant not raising the section 9.2(1) issue during the arbitration hearing itself but doing so in its posthearing brief. Respondent claims that by addressing that issue in its brief, appellant violated the parties' agreement of February 4, 1983, and "deprived [respondent] of an opportunity to present evidence to the arbitrator concerning [that issue]." Appellant counters by arguing that respondent "had every opportunity to raise this issue to the arbitrator by either pointing it out during the course of the arbitration proceeding or by raising it after the briefs were submitted and prior to her decision."

Code of Civil Procedure section 1286.2, subdivision (a), requires judicial vacation of an arbitration award if that award was "procured by corruption,

fraud or other undue means." ██ ██ ██ The section applies when "fraud" is perpetrated by either the arbitrator or a party involved.[3]

██ Not every incidence of fraud[4] will be allowed a remedy; vacation of an award will lie only for occurrences of "extrinsic" fraud and not for "intrinsic" fraud. (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 633 [99 Cal.Rptr. 393].) "Extrinsic" fraud is that conduct which "results in depriving either of the parties of a fair and impartial hearing to their substantial prejudice." (*Stockwell* v. *Equitable F. & M. Ins. Co.* (1933) 134 Cal.App. 534, 540-541 [25 P.2d 873].)

██ The proper scope of inquiry for us then, is whether or not raising section 9.2(1) in the brief but not in the hearing constituted "extrinsic" fraud. That specific issue seems to be a rather unique one, only marginally addressed in the federal and state jurisdictions. There does, however, exist sufficient case law which we feel may properly serve as "cues" for our decision here.[5]

In *Harvey Aluminum, Inc.* v. *United Steelworkers of America* (C.D.Cal. 1967) 263 F.Supp. 488, the court vacated an arbitrator's award for want of a fair hearing when the arbitrator disregarded one of petitioner's eyewitnesses' testimony for being not timely offered.[6] While recognizing the broad discretion given to arbitrators in evidentiary matters, the court concluded ". . . that both parties have the right to assume that any arbitration hearing in which they become involved . . . will afford them the opportunity of presenting *all* of their material evidence and *that the Arbitrator, before*

---

[3]Appellant claims the section is applicable only to fraudulent acts by the arbitrator. This is too narrow an application; courts have previously applied the section to actions of the parties as well. (See, e.g., *Corral* v. *State Farm Mutual Auto. Ins. Co.* (1979) 92 Cal.App.3d 1004, 1012-1014 [155 Cal.Rptr. 342]; *Rios* v. *Allstate Ins. Co.* (1977) 68 Cal.App.3d 811, 818-819 [137 Cal.Rptr. 441].) Further, if the Legislature intended to limit subdivision (a) only to arbitrators' conduct it would have used the appropriate limiting words as it did in subdivisions (b)-(d).

[4]For a definition of "Actual Fraud" and "Constructive Fraud," see Civil Code sections 1572 and 1573, respectively. While they are two separate and distinct definitions, we note that at the very least, "fraud" deals with a misleading action by any one party which results in that party gaining an advantage over the party misled.

[5]In addition to the justification for our reliance on federal law as stated in footnote 2 (*ante*, at p. 1143), we also note that Code of Civil Procedure section 1286.2, when added in 1961, was based on the Federal Arbitration Act, 9 United States Code section 10(a), which similarly allows for judicial vacation of an arbitration award "procured by corruption, fraud, or undue means."

[6]The arbitrator in *Harvey Aluminum* stated that ". . . orderly procedure in arbitration requires each party to present the whole of its case-in-chief before it rests." (*Id.*, at p. 490.) The arbitrator found error since the petitioner presented one of its eyewitnesses as rebuttal and not as direct testimony. (*Ibid.*)

*closing the hearing, will inquire of all parties whether they have any further proofs to offer or witnesses to be heard."* (*Id.*, at p. 492, italics in original.)

The theories of fairness and fraud in an arbitration hearing were considered by the court in *Biotronik, Etc.* v. *Medford Medical Instrument Co.* (D.N.J. 1976) 415 F.Supp. 133, when it observed, ". . . an arbitration hearing is not fraudulently obtained . . . when the protesting party had an opportunity to rebut his opponent's claims *at the arbitration hearing.*" (*Id.*, at p. 137, italics added.) Further, the court stated, ". . . the focus . . . is upon whether the protesting party had an opportunity to discover and reveal the purported fraud *at the arbitration hearing.*" (*Id.*, at p. 138, italics added.) Regarding the scope of an arbitrator's discretion in evidentiary matters, our own Supreme Court declared, ". . . rules of judicial procedure need not be observed *so long as the hearing is fairly conducted.*" (*Sapp* v. *Barenfeld* (1949) 34 Cal.2d 515, 520 [212 P.2d 233], italics added.)

Examining the present record in light of all the preceding, we hold the trial court did not err in applying Code of Civil Procedure section 1286.2, subdivision (a), to this case. Most convincing are the final words of the parties and arbitrator just prior to the end of the arbitration hearing, when the appellant expressly maintained that no other evidence was to be submitted at the hearing.[7]

Mindful of the courts' statements in *Harvey, Biotronik* and *Sapp,* regarding a fair hearing, we find no reason (notwithstanding the agreement of February 4, 1983) why the appellant could not have raised the section 9.2(1) issue during the hearing.[8] To accept appellant's argument would be to compromise the basic due process rights of respondent as codified in Code of Civil

---

[7]"Mr. Tichy [counsel for appellant]: At this time, Madam Arbitrator, we rest.
"Mr. Rosenfeld [counsel for respondent]: I'll need another brief caucus, and we may be finished quickly."
[Off the record.]
"The Arbitrator: Back on the record.
"Mr. Rosenfeld: We do not have any evidence to present.

. . . . . . . . . . . . . . . . . . . . . . . . . .
"The Arbitrator: With that the matter will be submitted. Thank you very much.
[Whereupon the proceedings were concluded.]"

[8]Appellant claims that had respondent challenged the raising of section 9.2(1) in its own posthearing brief, the arbitrator could certainly have reopened the hearing to consider that issue. This is a totally unmeritorious opinion as section 9.2(1) would have been as inadmissible at any additional proceeding as it was at the original hearing, and also, a reopening of the proceedings would only have prolonged the resolution of the dispute, contrary to the very purpose (i.e., the expeditious resolution of disputes) of arbitration. (See *Weiman* v. *Superior Court* (1959) 51 Cal.2d 710 [336 P.2d 489]; *Vernon* v. *Drexel Burnham & Co.* (1975) 52 Cal.App.3d 706 [125 Cal.Rptr. 147]; *McRae* v. *Superior Court* (1963) 221 Cal.App.2d 166 [34 Cal.Rptr. 346, 98 A.L.R.2d 1249].)

Procedure section 1282.2, subdivision (d).[9] While an arbitrator may have great discretion in evidentiary matters, it cannot be so broad as to deny a party a chance to challenge the introduction of a new issue at a confrontational, adversarial hearing as opposed to a challenge made through a post-hearing brief.

Because the appellant knew of the February 4, 1983 agreement, and did not raise the section 9.2(1) issue at the appropriate time (if, indeed, it could have been raised at all), we find the trial court could construe such conduct as being within the scope of Code of Civil Procedure section 1286.2, subdivision (a).

The record can support no other conclusion than that reached by the trial court when it found "[b]y asserting [the section 9.2(1) issue] for the first time in its posthearing brief [appellant] intentionally and fraudulently deprived [respondent] of its opportunity to present evidence in arbitration concerning the nonexistence of section 9.2(1) on the date of Lahey's discharge."[10]

The judgment below is affirmed.

Scott, J., and Merrill, J., concurred.

---

[9]That section provides in relevant part: "The parties to the arbitration are entitled to be heard, to present evidence and to cross-examine witnesses *at the hearing.* . . ." (Italics added.)

[10]The impropriety of appellant's conduct is further apparent in the record when, in a September 9, 1983, meeting between the parties, respondent protested inclusion of section 9.2(1) in appellant's brief. Appellant responded, "I lived up to my word and we did not bring it up in the hearing. . . . I can't control what my attorney does." With such evidence in the record we find the trial court's finding of intentional fraud justified.