Filed 10/29/14  Dighe v. Dutt CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AJIT N. DIGHE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BIRENDRA DUTT et al.,<br><br>Defendants and Appellants. | B248363<br><br>(Los Angeles County<br>Super. Ct. No. SS022624) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Cesar C. Sarmiento, Judge.  Affirmed.

Cole Pedroza, Kenneth R. Pedroza and Cassidy C. Davenport for Defendants and Appellants.

The Ball Law firm and Byron T. Ball for Plaintiff and Respondent.

Birendra Dutt (Dutt) and Uplander Properties, LLC (collectively appellants) appeal from a judgment confirming an arbitration award. The arbitration award, entered in favor of Ajit N. Dighe (respondent), requires appellants to pay respondent a total of $524,069.86. Appellants contend that the trial court erred in determining that the arbitrator did not exceed his powers in granting respondent this award based on a theory of implied-in-fact contract, when no such theory was asserted in the complaint and respondent never sought to amend his complaint to assert such a theory. Appellants also contend that the trial court erred in declining to vacate the award on the grounds of misconduct and fraud.

We find no error and affirm the judgment.

## FACTUAL BACKGROUND

In 2005, appellants retained respondent to provide architectural services for three projects. The first was the design of a custom home to be built at 6892 Arizona Avenue, Los Angeles, California. An "Abbreviated Standard Form of Agreement Between Owner and Architect" (standard form agreement) was prepared for the project on March 3, 2005, but was only signed by respondent.

The second project was for a remodel and expansion of an office building located at 5800 Uplander Way, Culver City, California. On January 3, 2005, a standard form agreement was created for this project. The document was signed by both appellants and respondent.

The third project was a remodel of Dutt's residence at 6890 Arizona Avenue, Los Angeles, California. Two separate standard form agreements were created for this project. The first, dated March 21, 2005, was not signed by either party. The second, dated December 2, 2009, was signed by respondent but not appellants.

## PROCEDURAL HISTORY

On April 23, 2010, respondent filed a complaint against appellants for breach of contract and quantum meruit. In the complaint, respondent alleged that "Notwithstanding the extensive professional services provided to [appellants] by [respondent], [appellants]

2

have failed and refused, and continue to fail and refuse, to compensate [respondent] for such work."

On January 24, 2012, the parties stipulated to binding arbitration.

On March 16 and May 9, 2012, a binding arbitration hearing took place before the Hon. Enrique Romero, Judge of the Superior Court (Ret.). On June 23, 2012, the arbitrator issued a detailed written interim arbitration award. The arbitrator found that the evidence showed that "the written agreement for the office renovation, as modified, was intended to be a 'master agreement' for the properties." In addition, "the parties entered into an implied-in-fact contract based on the 'acts and conduct of the parties and all of the surrounding circumstances involved . . . .' See Del E. Webb Corp. v. Structural Materials Co. (1981) 123 Cal.App.3d 593, 611." "[Respondent] complied fully with all that was required of him under the three contracts and he presented quite [a bit] of evidence establishing that he put in hundreds of hours on behalf of [appellants] . . . [t]his was established not only by and through the testimony of [respondent] himself but that of other witnesses." The arbitrator further found that respondent's work was "'high quality,'" and that his "billing was reasonable." The evidence showed damages for the three properties in the amount of $504,881.

On July 31, 2012, the arbitrator entered a final binding arbitration award in the amount of $504,881 plus costs of $19,188.86 for a total award of $524,069.86 in favor of respondent.

Respondent filed a petition to confirm the arbitration award on August 22, 2012. On September 4, 2012, appellants filed an opposition to the petition to confirm the arbitration award. On the same date, appellants filed a petition to vacate the arbitration award.

On November 8, 2012, the trial court issued a tentative ruling granting respondent's petition to confirm the arbitration award. The court noted that while appellants presented three grounds for vacating the award, the argument for each was essentially the same. In sum, they contended that "the arbitrator acted improperly in awarding [respondent] an award premised on an implied-in-fact contract theory, when

3

none was asserted in the subject complaint and [respondent] never moved to amend and add such a theory."

The court noted that judicial review of arbitration awards is very limited. Errors of law are not grounds for challenging an award (citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*)), and a trial court may not examine the validity of the arbitrator's reasoning. In sum, the court simply may not substitute its judgment for that of the arbitrator (citing *Morris v. Zuckerman* (1968) 69 Cal.2d 686, 691).

The court further explained that where the lawsuit has been stayed pending arbitration, an award may encompass any issues submitted by the parties, whether or not pleaded in the complaint. "In such cases, the arbitrator does not 'exceed his powers' in going beyond issues raised in the lawsuit pleadings" (citing *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 435-436 (*Hall*)).

The trial court concluded that appellants failed to show that the arbitrator engaged in fraud, undue influence, misconduct, or acted in excess of his powers. Respondent's petition to confirm the award was granted. Appellants' petition to vacate was denied.

On February 25, 2013, the trial court entered a final judgment confirming the arbitration award.

On April 23, 2013, appellants filed their notice of appeal from the judgment.

## DISCUSSION

### I. Applicable law and standards of review

The Legislature has expressed its strong support for private arbitration and the finality of arbitral awards. (*Moncharsh, supra*, 3 Cal.4th at p. 32.) Thus, the scope of judicial review of arbitration awards is extremely narrow. (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.) Generally, "'[t]he merits of the controversy between the parties are not subject to judicial review.' [Citations.]" (*Moncharsh*, at p. 11.) "More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.]" (*Ibid*.) "[I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Ibid*.)

4

However, Code of Civil Procedure section 1286.2 (section 1286.2) provides limited exceptions to this general rule. Under section 1286.2, a court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).) A court must also vacate an award where it was procured by fraud or where the rights of the party were substantially prejudiced by the misconduct of the arbitrator. (§ 1286.2, subds. (a)(1) & (a)(3).)

On appeal from a trial court's order granting or denying a request to vacate an arbitration award, our review is de novo. (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1196.) However, we apply the substantial evidence test to the trial court's ruling to the extent it rests upon a determination of disputed factual issues. (*Ibid.*)

When determining whether an arbitrator has exceeded his or her powers, we must "display substantial deference towards the arbitrator's determination of his or her contractual authority. [Citations.]" (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 408.) "All reasonable inferences must be drawn in support of the award. [Citation.]" (*Ibid.*)

## II. The award did not exceed the arbitrator's powers

Contractual arbitration allows the parties to an arbitration agreement to define the powers of the arbitrator. (*Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 875.) "'"The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citations.]"'" (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 351.) Thus, we begin our discussion of the arbitrator's powers by reviewing the relevant arbitration agreement, which provides that:

> "Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration . . . unless the parties mutually agree otherwise."

5

We note that the language of the arbitration agreement is broad, covering disputes not only arising out of the contract in question but disputes "relating to" the agreement. Under the plain language of the contract, it is within the power of the arbitrator to determine issues relating to an implied-in-fact contract arising out of or relating to the architect/client relationship created by this written contract between the parties.

In spite of the broad language of the arbitration agreement, appellants argue that the existence of an implied contract was not an issue submitted to the arbitrator for resolution, nor was it within the scope of his powers. Appellants cite *Moncharsh, supra*, 3 Cal.4th at page 28 as authority for their position that an arbitrator only has power to resolve the merits of the controversy submitted to him. However, *Moncharsh* does not support appellants' position that the arbitrator exceeded his power in this case.

In *Moncharsh*, the dispute concerned a division of attorney fees between an attorney and his former law firm. The arbitrator ruled in the law firm's favor, finding that the attorney had an obligation to split the attorney fees as set forth in the contractual agreement between the parties. (*Moncharsch, supra*, 3 Cal.4th at pp. 7-8.) The attorney appealed from the arbitrator's decision, arguing, among other things, that the arbitrator exceeded his authority.

The *Moncharsh* court began with a general discussion of arbitral finality, setting forth the general rule that "with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh, supra*, 3 Cal.4th at p. 11.) As to the attorney's claim that the arbitrator exceeded his powers, the high court disagreed, explaining: "It is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [Citations.]" (*Id.* at p. 28.) Thus, to the extent that Moncharsh was arguing that the arbitrator exceeded his powers "merely because the arbitrator reached an erroneous decision," the court rejected his argument. (*Ibid.*)

The *Moncharsh* court further explained: "[I]t is within the 'powers' of the arbitrator to resolve the entire 'merits' of the 'controversy submitted' by the parties. [Citation.] Obviously, the 'merits' include all the contested issues of law and fact

6

submitted to the arbitrator for decision." (*Moncharsh, supra*, 3 Cal.4th at p. 28.) Where, as here, the arbitration agreement covers all disputes "arising out of" the contract, issues regarding the payment of fees do not fall beyond the scope of the agreement. (*Ibid*.) "Under these circumstances, the arbitrator was within his 'powers' in resolving the questions of law presented to him." (*Ibid*.)

Contrary to appellants' argument, the *Moncharsh* case supports a finding that the arbitrator acted within his powers when he made a finding that an implied contract existed between the parties based on the acts and conduct of the parties. The architect/ client relationship between the parties arose out of the master agreement for the properties. Thus, it was within the arbitrator's powers to decide controversies related to that relationship -- including the controversy over whether respondent provided architectural services for which appellants owed him money.

Appellants also cite *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518 (*Cobler*), which involved a dispute between a professional career consulting agency and a former client of the agency. In an appeal from an arbitration award in favor of the former client, the agency argued that the arbitrator acted in excess of his jurisdiction in awarding tort damages for emotional distress in excess of the contract damages pled in the arbitration demands. The Court of Appeal agreed, and reversed the trial court's judgment in part with directions to vacate the portion of the award for emotional distress. (*Id.* at pp. 532-534.)

The *Cobler* court noted that the arbitration agreement at issue there was narrow in scope, certainly more narrow than the one before us in this matter. The *Cobler* arbitration agreement provided: "'Should there be a dispute arising from this Agreement, it is mutually agreed that it shall be promptly settled through binding arbitration in accordance with the rules of the [AAA].'" (*Cobler, supra*, 217 Cal.App.3d at p. 530.) The court explained:

> "This type of arbitration clause is generally considered to be more limited in scope than would be, for example, a clause agreeing to arbitrate "'any controversy . . . arising out of *or relating to* this agreement,'" which

7

might thus cover misconduct arising out of the agreement as well as contractual issues. [Citation.]"

(*Cobler, supra*, 217 Cal.App.3d at p. 530.)

The court went on to conclude that because that particular arbitration agreement was very limited, the only basis for tort damages would have been in any tort issues properly submitted to the arbitrator. (*Cobler, supra*, 217 Cal.App.3d at p. 531.) The pleadings raised only contract issues, therefore there was no basis for an award of emotional distress damages.

The matter before us is distinguishable. First, the arbitration agreement at issue here contains broader language than was found in the arbitration agreement at issue in *Cobler*. Here, the agreement covers "Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof." Thus, the scope of the arbitrator's power was very broad: he could handle disputes arising out of the agreement or simply relating to the agreement in some way.

In addition, unlike the situation in *Cobler*, here the complaint specifically sought money owed for professional services. The complaint provided that: "[Respondent] seeks to recover monies owed to him by [appellants] in connection with professional architectural and engineering design services . . . ." This claim for money owed was not limited to the written contracts between the parties. Respondent also sought fees on a theory of quantum meruit. He argued that his "time, effort, work, investment and expense . . . had and has independent value, value which [appellants] have exploited and capitalized upon for themselves." In addition, respondent argued that "[i]t is unfair and inequitable to allow [appellants] to benefit from [respondent's] work, time, effort, investment and expense without compensation to him." Respondent sought not only contractual damages but "damages in the amount of the fair and just value of [his] work, time, effort, investment and expense" and "[f]or such other and further relief as the court deems just, appropriate and proper." Therefore, not only did the arbitrator possess broad

8

powers to arbitrate claims relating to the contracts, respondent also framed his claims expansively enough to encompass the theory of an implied-in-fact contract.

*Hall* is instructive. In *Hall*, sellers of real property sued two individuals as brokers and agents for the seller's property. Although the complaint did not allege a partnership between the two individuals, it alleged that each acted as agent for the other. (*Hall, supra*, 18 Cal.App.4th at p. 430.) Ultimately the arbitrator ruled in the sellers' favor, finding that the two individuals were partners who were required to share the liabilities. (*Id.* at p. 432.) One of the individual defendants sought to vacate the arbitrator's award, arguing that the arbitrator exceeded his jurisdiction by determining the partnership issue, which the pleadings did not raise.

The trial court vacated the award, but the Court of Appeal reversed. The Court of Appeal rejected the notion that "a civil complaint filed before invocation of an arbitration clause limits the scope of private arbitration." (*Hall, supra*, 18 Cal.App.4th at p. 435.) Instead, an arbitrator derives his power solely from the arbitration agreement. (*Id.* at p. 436.) It is for the arbitrator to decide what issues are actually necessary to the ultimate decision. (*Ibid.*) Thus, the complaint in this matter cannot serve to restrict the scope of the arbitrator's power. Instead, the scope of the arbitrator's power must be determined from the broadly worded arbitration agreement.

In addition, contrary to appellants' arguments, the award was rationally related to the contracts at issue. (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 [an arbitrator exceeds his powers when he fashions a remedy that is not rationally related to the contract].) The contracts -- both written and implied -- provided that appellants would compensate respondent for architectural services. The arbitrator's award listed the damages in specific categories: schematic design/design development of the office building; design/construction of the custom home; and remodeling. Amounts previously paid were taken into consideration. In view of the arbitrator's careful reasoning, we reject appellants' position that the award was not rationally related to the contracts.

9

In sum, appellants have failed to show that the arbitrator acted in excess of his powers in issuing the award.

## III.  The arbitrator did not commit misconduct

A court may vacate an arbitration award if it finds that "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator."  (§ 1286.2, subd. (a)(3).)  Appellants argue that the arbitrator committed misconduct by allowing respondent to assert the implied-in-fact contract theory after the completion of the evidence.  Appellants complain that the only mention of an implied-in-fact contract theory was in respondents' posthearing brief.  Before that, appellants argue, there was not the slightest hint that respondent sought damages on an implied-in-fact contract.

Appellants cite no authority suggesting that the arbitrator's act of considering a theory of implied-in-fact contract may be categorized as misconduct under section 1286.2, subdivision (a)(3).  Appellants cite *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, which involved a health plan's fraudulent conduct in making misrepresentations regarding the expeditiousness of its arbitration system and engaging in dilatory conduct to postpone arbitration until after the patient's death.  The case does not support appellants' theory of misconduct in this matter.  Numerous other cases cited by appellants do not involve arbitration at all.  (*Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 706; *Burtnett v. King* (1949) 33 Cal.2d 805; *Rainer v. Community Memorial Hosp.* (1971) 18 Cal.App.3d 240; *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359; *City of Stanton v. Cox* (1989) 207 Cal.App.3d 1557; *Tri-Delta Engineering, Inc. v. Insurance Co. of North America* (1978) 80 Cal.App.3d 752.)  Nor do these cases support appellants' theory of misconduct.

The arbitrator did not commit misconduct by considering a theory of recovery not specifically spelled out in the complaint.  As set forth above, the complaint cannot limit the scope of arbitration.  (*Hall, supra*, 18 Cal.App.4th at p. 435.)  Furthermore, even if respondent's claims against appellants were limited to those set forth in the complaint, appellants had ample notice that respondent was seeking compensation for his

10

professional services, and that such claims were not confined to the three written contracts.

Consideration of the theory of implied-in-fact contract was well within the arbitrator's powers, and we do not second guess that decision by the arbitrator, regardless of the timing. (*Moncharsh, supra*, 3 Cal.4th at pp. 11-12 [we do not review an arbitration award for legal or factual error].)[1]

## IV. Appellants have failed to show fraud

A court may vacate an arbitration award if "[t]he award was procured by corruption, fraud or other undue means." (§ 1286.2, subd. (a)(1).) Appellants argue that by raising the implied-in-fact contract theory for the first time in his postarbitration brief, respondent deprived appellants of an opportunity to present evidence to the arbitrator on that issue.

Appellants rely heavily on *Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138 (*Pacific*). *Pacific* involved an arbitration concerning an employee dismissal. Prior to the arbitration, both appellant and respondent stipulated that the only issue being submitted to the arbitrator was whether or not the discharge of the employee was in accordance with the collective bargaining agreement, and if not, the appropriate remedy. (*Id.* at p. 1142.) One particular provision of the collective bargaining agreement, section 9.2(1), provided that an employee would be allowed to remain on the job without loss of pay until the employee's discharge was sustained under the grievance procedure. (*Ibid*.) At the time of the arbitration at issue, it was not clear whether section 9.2(1) was in effect. However, the parties made an agreement whereby section 9.2(1) would be reinserted into the collective bargaining agreement, but would not be applied in the termination arbitration hearing at issue. (*Id.* at p. 1142, fn. 1.)

---

[1] Because we have found that appellants have failed to show misconduct on the part of the arbitrator, we need not address their claims of substantial prejudice. (§ 1286.2, subd. (a)(3).)

11

In spite of the parties' express agreement that section 9.2(1) would not be raised in the arbitration hearing, one of the parties raised the issue in its posthearing brief, arguing that the provision was violated because the employee was not permitted to remain on the job until the grievance procedure was finished. (*Pacific, supra*, 183 Cal.App.3d at pp. 1142-1143.) The arbitrator agreed, finding that (1) the discharge was in accordance with the collective bargaining agreement, but (2) the employee was entitled to back pay for the period commencing with the date of his termination and concluding with the date of the decision. (*Ibid*.)

The trial court vacated the award of back pay, and the Court of Appeal affirmed, finding that the arbitrator exceeded her power by going beyond the scope of the issue submitted to her. The court noted that a party cannot be required to arbitrate an issue that it has not agreed would be subject to arbitration. (*Pacific, supra*, 183 Cal.App.3d at p. 1143.) The court emphasized that it saw "no evidence that the arbitrator felt section 9.2(1) was necessary for the disposition of the issue submitted." (*Id*. at p. 1145.)

While the *Pacific* court agreed that the appellant's actions could be described as fraud under section 1286.2, subdivision (a), the court emphasized that this was because appellant knew of the prior agreement not to raise that provision during the arbitration:

> "Because the appellant knew of the February 4, 1983 agreement [not to raise section 9.2(1) in the arbitration proceeding], and did not raise the section 92.(1) issue at the appropriate time (if, indeed, it could have been raised at all), we find the trial court could construe such conduct as being within the scope of Code of Civil Procedure section 1286.2, subdivision (a)."

(*Pacific, supra*, 183 Cal.App.3d at p. 1149.)

The present matter is distinguishable from the situation in *Pacific*. As set forth above, the arbitrator had broad power to consider all "[c]laims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof." This power was not limited by the pleadings -- nor was it limited by any express agreement of the parties. In contrast to *Pacific*, the parties had no written agreement not to raise the theory of implied-in-fact contract. Thus, *Pacific* does

12

not support a finding of fraud in this case.  Under the circumstances, the trial court did not err in determining that respondent's conduct did not amount to fraud.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT