Filed 3/24/15  Vista International Ins. Brokers v. Bernstein CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VISTA INTERNATIONAL INSURANCE BROKERS, | B247681 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC404320) |
| v. | |
| MAUREEN BERNSTEIN, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Daniel Buckley, Judge.  Affirmed in part, reversed in part, and remanded with direction.

Law Offices of Samuel Kornhauser and Samuel Kornhauser for Plaintiff and Appellant.

Gersh | Derby, Jeffrey F. Gersh and James A. Sedivy for Defendant and Appellant.

_____

# INTRODUCTION

Plaintiff Vista International Insurance Brokers appeals from a partial entry of judgment confirming an arbitration award in favor of its former employee, Defendant Maureen Bernstein, who cross-appeals. We exercise our discretion to construe these appeals as writs of mandate. Vista asserts that the court erred in denying its request for a preliminary injunction, in ordering the parties to arbitrate, and in entering judgment on the arbitration award. In her cross-appeal, Bernstein argues that the court wrongfully excluded Vista's equitable claim from the judgment entered on the arbitration award.

As to Vista's arguments, we affirm the judgment because the preliminary injunction was not appropriate where it was unlikely Vista would succeed on its trade secret claim, the court avoided inconsistent rulings by compelling Vista and Bernstein to arbitrate their claims while staying other related litigation, and Vista failed to establish a basis for vacating the award. In regard to Bernstein's cross-appeal, we conclude that the court erred in excluding Vista's claim for injunction from the judgment it entered in favor of Bernstein on the arbitration award. We thus reverse the judgment solely on that basis and remand with instructions to the trial court.

# FACTS AND PROCEDURAL BACKGROUND

Bernstein, a successful insurance broker, entered into an employment agreement with Vista in 2000 to perform brokerage services for Vista's clients. The employment agreement contained provisions stating that Bernstein owned the customer accounts that she brought with her to Vista and that she would acquire a percentage of ownership in accounts that she developed at Vista. The agreement provided that Vista had the "right of first refusal to acquire" the accounts upon Bernstein's departure from Vista. Another section of the employment agreement stated that the information concerning Vista's accounts and information reflecting client identity was confidential information that Bernstein could not disclose to third parties or subsequent employers, or use to compete with Vista. The employment agreement also contained an arbitration clause, which mandated the arbitration of any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of the agreement.

2

In 2008, Bernstein left Vista and began working for another brokerage company, Kaercher Campbell & Associates (KCA). When Bernstein ended her employment with Vista, she told Vista that she did not intend to comply with the right of first refusal portion of her employment contract. Bernstein then sent announcements to all of her Vista accounts, informing them that she was leaving Vista and that KCA was her new employer. Although, these announcements did not expressly suggest or urge the clients to follow her, many clients followed her to KCA.

Vista subsequently sued Bernstein and her new employer, alleging causes of action for breach of contract, injunctive relief, misappropriation of trade secrets, unfair competition and business practices, intentional interference with prospective economic advantage, breach of confidential relationship, and conspiracy. In addition, Vista sought a preliminary injunction to enjoin Bernstein and KCA "from using [Vista]'s trade secret and confidential customer list and customer information to solicit or contact Vista insurance customers." The court denied the preliminary injunction, stating that "injunctive relief as a provisional remedy at the outset of litigation [was] not practical in this case."

Bernstein petitioned the court to compel Vista to arbitrate its claims against Bernstein, pursuant to the employment agreement. The court granted the petition in March 2009, and stayed the litigation between Vista and KCA until the arbitration was resolved. In July 2012, the arbitrator issued its final award, concluding that Bernstein had not misappropriated any trade secrets because there was no substantial evidence that Bernstein made use of confidential information. The arbitrator concluded that the evidence only indicated that Bernstein used client contact information to send clients an announcement of her changed employment, which was permitted under California case law. The arbitrator further stated that Vista suffered no recoverable damages with regard to Bernstein's breach of the right of first refusal clause of the contract.

3

Bernstein then petitioned the trial court to confirm the arbitration award and enter judgment on it. Vista opposed entry of judgment and petitioned the court to vacate the award. At the hearing, the court described the arbitration award as "well-reasoned" and concluded that "the arbitrator did not do anything that warrants vacation of the award." After the court decided to confirm the award, the parties disputed how the judgment was to be entered based on their varying interpretations of the March 2009 order compelling them to arbitrate. Bernstein asserted that the arbitration disposed of all claims and that judgment should be entered on all equitable and legal claims. In contrast, Vista argued that the 2009 order only sent legal claims to arbitration and reserved Vista's injunctive claim for trial. The trial court sided with Vista's interpretation and entered judgment on all claims with the exception of Vista's claim for injunctive relief.

## DISCUSSION

### 1. We Construe the Appeal and Cross-Appeal as Writ of Mandate Petitions

Both parties improperly appeal from a judgment that only partially disposes of Vista's claims against Bernstein. The trial court expressly stated that judgment was "entered in favor of Ms. Bernstein and against Vista on all claims in accordance with the Award, . . . except for injunctive relief, which claim was not submitted for arbitration as it was reserved pursuant to the March 9, 2009 Order." This is not an appealable order because "an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743.)

"However, (1) under unusual circumstances, and (2) where doing so would serve the interests of justice and judicial economy, an appellate court may use its discretion to construe an appeal as a petition for writ of mandate." (*Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 92.) These unusual circumstances exist "where requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings, the briefs and record include[] in substance the necessary elements for a

4

proceeding for a writ of mandate, there [i]s no indication the trial court would appear as a party in a writ proceeding, the appealability of the order [i]s not clear, and all the parties urge[] the court to decide the issue rather than dismiss the appeal." (*H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1367, citing *Olson v. Cory* (1983) 35 Cal.3d 390, 400-401.) Under such circumstances, it would be needlessly dilatory, inefficient, and circuitous to dismiss the appeal rather than construe it as a writ of mandate. (*Olson v. Cory,* at p. 401.)

Bernstein requests that we treat her appeal as a writ. Although Vista does not make the same request, we exercise our discretion to hear both Vista's appeal and Bernstein's cross-appeal as petitions for writs of mandate due to the unusual circumstances of this case and in the interest of judicial economy. Here, the parties have briefed the issues raised by the judgment entered on the arbitration award, and the record includes the documents necessary for us to decide the issues raised. Both parties urge us to decide their respective issues, and there is no indication that the trial court would be a party to a writ proceeding in this context. Importantly, the aspect of the judgment at issue in the cross-appeal is precisely what inhibits the judgment from being final and appealable: Bernstein argues in her cross-appeal that the court should have entered judgment on all claims. For reasons explained below, we agree with Bernstein that the court improperly excluded equitable claims from its judgment. Thus, the court's judgment should have disposed of all claims between the parties and should have been final and appealable. Therefore, requiring the parties to wait for a final judgment would lead to unnecessary trial proceedings and litigation.

We consequently exercise our discretion and construe the appeal and cross-appeal as petitions for writ of mandate in the interest of judicial efficiency.

5

*2.* ***The Court Erred in Excepting Plaintiff's Equitable Claims from the Entry of***

***Judgment***

In her cross-appeal that we construe as a writ of mandate, Bernstein argues that the trial court improperly excluded claims for injunctive relief when it entered judgment on the arbitration award in her favor. As mentioned above, the trial court's order stated that judgment was "entered in favor of Ms. Bernstein and against Vista on all claims in accordance with the Award, . . . except for injunctive relief, which claim was not submitted for arbitration as it was reserved pursuant to the March 9, 2009 Order." Bernstein argues that the court improperly interpreted the 2009 order in making this ruling and that the claims associated with injunctive relief have already been arbitrated. We review this issue of law de novo. (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1077; *American Civil Rights Foundation v. Los Angeles Unified School Dist.* (2008) 169 Cal.App.4th 436, 448 ["The interpretation of the 1981 final order of the superior court is an issue of law subject to de novo review."].)

Bernstein's employment contract has an arbitration clause, which contains two parts, stating:

"9. Arbitration and Equitable Relief

(a) Arbitration. Except as provided in Section 9(b) below, the parties hereto agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by Arbitration to be held in Los Angeles, California . . . . The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. . . .

(b) Equitable Remedies. Employee agrees that it would be impossible or inadequate to measure and calculate the company's damages

6

from any breach of the covenants set forth in Sections 5, 6 and 8[1] herein. Accordingly, Employee agrees that if Employee breaches any of such Sections, the company will have available, in addition to any other right or remedy available, the right to immediately obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach to specific performance of any such provisions of this Agreement, pending the selection of an Arbitrator under paragraph (a).

Employee further agrees that no bond or other security shall be required with obtaining such equitable relief and hereby consents to the issuance of such injunction and to the ordering of specific performance."

Per Bernstein's petition, the court ordered the parties to arbitrate the matter in 2009 based on this section of the contract. In the 2009 order, the court held that "[t]he petition [to compel arbitration] is granted in part, and denied in part (as to claims falling within Section 9(b) of the employment agreement). [¶] Plaintiff and defendants [*sic*] Maureen Bernstein shall arbitrate the entire First Amended Complaint, with the exception of any claim for an equitable remedy pending the appointment of an arbitrator set forth in Section 9(b) of the employment [agreement]."

After Bernstein succeeded in arbitration against Vista, in 2012, she petitioned the trial court for entry of judgment against Vista confirming the arbitration award. A different judge than the one who issued the 2009 order compelling arbitration heard Bernstein's petition for entry of judgment. Vista argued that judgment could only be entered as to legal claims based on the language of the March 9, 2009 order. Bernstein argued that the arbitration disposed of all legal and equitable claims. The new judge agreed with Vista and stated that Vista's claim for injunctive relief was not disposed of in arbitration based on the language of the March 9, 2009 order.

---

1 The court stated that "Sections 5, 6 and 8 relate to confidential information, the return of company documents upon end of employment, and solicitation of company employees."

7

After a thorough review of the record, we conclude that the court erred in excluding the claim for an injunction from its final order. Here, the court ordered all claims to arbitration, "with the exception of any claim for an equitable remedy pending the appointment of an arbitrator set forth in Section 9(b) of the employment [agreement]." Section 9(b) of the employment agreement makes it clear that the all disputes related to the contract must be arbitrated, with the exception that Vista may "immediately obtain" an injunction from a court "pending the selection of an Arbitrator." Meaning, Vista has a right to obtain a preliminary injunction prior to the appointment of an arbitrator. The contract's use of the word "immediately" to modify the verb "obtain" supports this interpretation, as an arbitrator, not yet selected, would be unable to provide such immediate and preliminary relief. The phrase "pending selection of an Arbitrator" also indicates that this judicial injunctive relief is limited to the timeframe occurring prior to commencement of arbitration.

Our interpretation is further supported by the contractual terms highlighted by the court's 2009 order. In the order, the court noted that Vista alleged a cause of action for injunctive relief in its complaint. The order also stated that the arbitrator has authority to grant injunctions. Vista's proposed interpretation of the employment contract, which would require all claims for injunctive relief to be litigated in court, is contrary to the terms of the employment contract which expressly provide for injunctive relief in arbitration and is incongruent with the court's description of the contract in the 2009 order. Furthermore, other portions of the 2009 order corroborate that the court intended the claims for injunctive relief to be arbitrated. In a separate section of the March 9, 2009 order, the court refers to the clause in section 9(b) as "the preservation to the employer of the right to seek preliminary injunctive relief pending selection of the arbitrator." The arbitrator also omitted any mention of equitable claims against Bernstein, when he listed the claims that were stayed pending the arbitration. There, the arbitrator stated that the "claims against [KCA] are stayed pending arbitration of the claims against Bernstein."

8

Additionally, Vista's claim for an injunction cannot stand alone, and even Plaintiff admits that it was premised on the same causes of action for which Vista sought damages. The 2009 order expressly states that "[t]he claims set forth in the [first amended complaint] come within the broad language of the arbitration agreement." All of these causes of action were addressed and disposed of by the arbitrator, who determined that Bernstein did not solicit the clients and that Vista incurred no damage. As Vista lost on the merits of its claims, injunctive relief was not appropriate.

In sum, we interpret the court's 2009 order to mean that Vista and Bernstein were required to arbitrate all claims both legal and equitable, with the exception of injunctive relief that could be sought and issued prior to the arbitrator's appointment. We therefore reverse the trial court's judgment to the extent that it excludes claims for injunctive relief, and issue a writ mandating the trial court to enter judgment on all claims (both legal and equitable).[2]

### 3. *The Court Did Not Abuse Its Discretion in Denying the Preliminary Injunction*

Vista argues that the court erred in denying its motion for a preliminary injunction to enjoin Bernstein and her new employer, KCA, from using the customer list and customer information to solicit or contact Vista insurance customers. When determining whether to issue a preliminary injunction, the trial court weighs two interconnected factors: the likelihood of the success on the merits by the party seeking the injunction, and the harm that would be caused by issuing or not issuing the injunction. (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1280.) "The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction. [Citation.]" (*Butt v. State of California* (1992) 4 Cal.4th 668, 678 (*Butt*).) Nonetheless, "[a] trial court may not grant a preliminary injunction,

---

[2] To the extent the judgment excepts Bernstein's claims for attorney fees and costs, which were denied by the arbitrator, we affirm as neither party has appealed this portion of the judgment. On remand, judgment should be entered in favor of Bernstein as to all claims, except Bernstein's claims for attorney fees and costs.

9

regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Ibid.*) " 'The law is well settled that the decision to grant a preliminary injunction rests in the sound discretion of the trial court.' [Citation.] 'A trial court will be found to have abused its discretion only when it has " 'exceeded the bounds of reason or contravened the uncontradicted evidence.' " ' [Citation.] 'Further, the burden rests with the party challenging the [trial court's ruling on the application for an] injunction to make a clear showing of an abuse of discretion.' " (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 624.)

Here, the trial court denied the preliminary injunction request after properly weighing Vista's likelihood of success on the merits and the harm that would be caused by issuing or not issuing the injunction. In seeking the preliminary injunction, Vista asserted that its customer list was a trade secret, that it would likely succeed against Bernstein for misappropriation of the trade secret customer list, and that allowing Bernstein and her new employer to continue to use the customer list would result in irreparable financial harm and reputational damage to Vista.

The court explained that pursuant to the employment contract, Bernstein and Vista jointly owned the customer list and the percentage owned by each party varied from customer to customer. The court stated that "[i]t further appears from the agreement between the parties that they contemplated the eventual dissociation of defendant Bernstein from her employment with [Vista], that defendant Bernstein would take some of the customers whose identity she had learned through her employment with [Vista] with her when she left, and that the parties would negotiate or litigate, by formulae set forth in the agreement, how the future revenue from said customers would be shared between the parties." The court assessed that "[u]nder such circumstances plaintiff is not likely to prevail in proving that defendant Bernstein misappropriated any trade secret from plaintiff." The court also stated that based on the agreement, each party had an adequate remedy in the form of monetary damages. The court found that "injunctive relief as a provisional remedy at the outset of litigation is not practical in this case."

10

Vista argues that the court "erroneously held that [Vista] did not meet the requirements for issuance of preliminary injunction relief because [Vista] made an alternative claim for damages and therefore, has a legal remedy." We disagree. The court's analysis was not premised on an alternative remedy, but was grounded in balancing the likelihood of Vista's success with the potential harm.

As set forth above, the court determined that the list was not misappropriated and thus there was no probability that Vista would succeed on its trade secret misappropriation claim. This alone is fatal to the preliminary injunction request as it cannot be granted unless "there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Butt, supra,* 4 Cal.4th at p. 678.) To the extent that the court considered Vista's legal remedies, it did so in the context of examining Vista's harm. As the parties appeared to have anticipated the division of client accounts at the end of Bernstein's employment and provided for a formula to calculate the value of each account, harm to Vista did not appear irreparable or so great as to require injunctive relief, particularly where Vista's success on the merits was unlikely. Furthermore, " 'an injunction is an unusual or extraordinary equitable remedy which will not be granted if the remedy at law (usually damages) will adequately compensate the injured plaintiff.' " (*Department of Fish & Game v. Anderson–Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1565.) As damages appeared to be a sufficient remedy to make Vista whole, the harm here was not great enough to require extraordinary relief like an injunction. The court's consideration of Vista's legal remedy in this context was not an abuse of discretion.

Vista asserts that it did have a likelihood of success on the merits because the customer list satisfied the definition of a trade secret and injunctive relief was necessary to prevent Bernstein's solicitation to clients on that list. Yet, the court did not find that the customer list was not a trade secret. Rather, it concluded that Vista was "not likely to prevail in proving that defendant Bernstein misappropriated any trade secret." Misappropriation inherently requires that the defendant improperly acquire, disclose, or use a trade secret that is owned by another person. (Civ. Code, § 3426.1, subd. (b)

11

[defining misappropriation as "(1) [a]cquisition of a trade secret of another . . . or [¶] (2) [d]isclosure or use of a trade secret of another . . . "]; *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 874 [defining when trade secret misappropriation occurs].) Here, the contract indicated that Bernstein was the full owner of some client accounts and partial owner of other accounts. Bernstein cannot misappropriate a list of clients that she owns. As such, the court did not abuse its discretion in finding that Vista was not likely to succeed on its trade secret misappropriation claim.

We therefore affirm the trial court's denial of Vista's request for a preliminary injunction, as Vista would not likely succeed on the merits and the potential harm to Vista was not substantial. We conclude that the court did not exceed the bounds of reason or contravene uncontradicted evidence in making its ruling.

**4.      *The Order Granting the Motion to Compel Arbitration and Staying the Litigation Against KCA Was Proper***

Vista argues that the trial court committed reversible error by ordering arbitration of Vista's claims against Bernstein. Vista makes two arguments in this regard. First, Vista contends that arbitration is not available where, as here, a plaintiff employer seeks to enjoin a former employee from stealing or using the employer's trade secrets. Second, Vista contends that the court abused its discretion by not staying arbitration under Code of Civil Procedure[3] section 1281.2, subdivision (c). We address each in turn.

*a.      Arbitration Was Appropriate and Consistent with the Employment Agreement*

Section 1281.2 states that, subject to several exceptions, "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." Since the parties do not dispute the

---

[3]      All subsequent stator references are to the code of Civil Procedure, unless otherwise indicated.

language of the arbitration agreement or any extrinsic evidence related to this issue, we review the court's order granting the motion to compel arbitration under section 1281.2 de novo. (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1061-1062.)

As extensively quoted in the section two of this opinion, the arbitration clause expressly states that Vista and Bernstein are to arbitrate all disputes and controversies arising out of or relating to any interpretation, construction, performance, or breach of the employment agreement. Vista's entire lawsuit against Bernstein stems from the employment agreement and her alleged breach of it by soliciting clients from the client list, which Vista claims to be a trade secret. Thus, pursuant to section 1281.2, arbitration was appropriate.

Vista contends that "arbitration is not available where a plaintiff employer seeks to enjoin a former employee from stealing or using the employer's trade secret customer list and/or to enjoin the former employee (and employee's new employer) from unfairly competing in violation of the unfair competition laws by using the employer's trade secret customer list and customer information to solicit the employer's customers." Vista cites *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 175-176 (*Mercuro*) and *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 275-276 (*O'Hare*) to support its argument. Yet it is unclear how either case supports Vista's contention. *Mercuro* and *O'Hare* both involve non-mutual, substantively unconscionable, and thus unenforceable arbitration clauses. (*Mercuro, supra,* 96 Cal.App.4th at pp. 174-179; *O'Hare, supra,* 107 Cal.App.4th at pp. 273-279.) Vista never alleged that the arbitration clause was unconscionable, and Vista's brief does not elucidate how either case supports its argument that arbitration is not available when prosecuting a trade secret misappropriation claim.

On the contrary, *Mercuro* indicates that an arbitration clause is properly enforceable in a case like this, where both employer and employee are required to litigate trade secret claims. The *Mercuro* court explained that the contract in that case was unconscionable because, "[a]n employee terminated for stealing trade secrets, for example, must arbitrate his wrongful termination claim under the agreement but [the

13

employer] can avoid a corresponding obligation to arbitrate its trade secrets claim against the employee by the simple expedient of requesting injunctive or declaratory relief." (*Mercuro, supra,* 96 Cal.App.4th at p. 176.) The arbitration clause here is mutual and thus enforceable, even as to Vista's trade secret and competition claims. The court thus appropriately enforced the arbitration clause over Vista's objection in this regard.

> b.     *The Court Did Not Abuse Its Discretion in Staying the Litigation and Ordering the Arbitration to Proceed*

Second, Vista argues that under section 1281.2, subdivision (c), the court should not have ordered arbitration because Vista sued Bernstein as well as Bernstein's new employer KCA, which was not subject to the arbitration agreement. Vista asserts that because the arbitration involved some of the same transactions which are involved in its litigation with KCA, arbitration should have been stayed pending the outcome of the pending litigation.

Section 1281.2, subdivision (c) states that a court shall order arbitration of the controversy if it decides that there is an agreement to arbitrate, unless it determines that "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."  If the third party exception stated in subdivision (c) applies, the court has several options:  "the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) *may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding*; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (§ 1281.2, subd. (c), emphasis added.)  "If the third party exception applies, the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse." (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406; *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 692-693 (*Metis*) [Section

14

1281.2, subdivision (c) "gives the court several options, including denying the petition for arbitration, staying the arbitration pending disposition of non arbitrable claims in the court, or staying the litigation pending completion of the arbitration. [Citation.] What the trial court chooses to do in this situation is a matter of its discretion, guided largely by the extent to which the possibility of inconsistent rulings may be avoided."].) "We will not disturb the court's discretionary ruling unless it exceeded the bounds of reason." (*Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 475.)

Here, the court determined that the third option was appropriate and ordered arbitration of Vista's claims against Bernstein, staying the pending court action between Vista and KCA. The heart of Vista's argument on appeal is that the court abused its discretion in choosing that third option (proceeding with arbitration between Bernstein and Vista and staying litigation between Vista and KCA), rather than selecting the fourth option under section 1281.2, subdivision (c) (staying arbitration between Bernstein and Vista and proceeding with litigation between Vista and KCA). Vista asserts this was error and that the court should have stayed arbitration "to allow the claim against the defendant[,] who cannot assert arbitration[,] to go forward in order to avoid possible inconsistent outcomes."

Yet, the court effectively assuaged such concerns regarding inconsistency by preventing both proceedings from going forward simultaneously. In ordering the arbitration be adjudicated first, the court ensured that it would not make conflicting rulings on common issues of law or fact in the litigation between Vista and KCA as such litigation would occur after the entry of judgment on claims against Bernstein. Reversing the order of the arbitration and the litigation, as proposed by Vista, would have been no more effective in preventing inconsistent rulings. Furthermore, the decision to proceed with arbitration claims first was practical, given that the weight of Vista's factual contentions and claims were against Bernstein. Vista asserted all of its eight causes of action in the first amended complaint against Bernstein, whereas Vista asserted only six against KCA. More importantly, Vista's entire case revolves around Bernstein's alleged

15

misappropriation of trade secrets and breach of contract. Vista's claims against KCA are entirely derivative from Bernstein's alleged wrongdoing, and premised on the allegation that Bernstein stole the customer list from Vista and provided it to KCA. It thus made sense to address the claims against Bernstein first.

As the Supreme Court has explained, section 1281.2, subdivision (c) "is not a special rule limiting the authority of arbitrators. It is an evenhanded law that allows the trial court to stay arbitration proceedings while the concurrent lawsuit proceeds or stay the lawsuit while arbitration proceeds to avoid conflicting rulings on common issues of fact and law amongst interrelated parties. Moreover, '[s]ection 1281.2(c) is not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration. Rather, it is part of California's statutory scheme designed to enforce the parties' arbitration agreements . . . . Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement.' " (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 (*Cronus*).) Consistent with the intent behind section 1281.2, subdivision (c), the court evenhandedly enforced the arbitration agreement and avoided inconsistent rulings as to the claims against KCA.

Furthermore, the court's decision to proceed with arbitration is also supported by public policy. "California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration. [Citations.] As the Supreme Court recently noted, ' . . . the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels . . . .' [Citation.] This strong policy has resulted in the general rule that arbitration should be upheld 'unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute. [Citation.]' [Citation.] [¶] . . . [I]f there is any reasonable doubt as to whether [the plaintiff]'s claims come within the . . . arbitration clause, that doubt must be resolved in favor of arbitration, not against it. [Citations.]" (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686–687.) Here, the

16

court's enforcement of the arbitration clause honors the contracting parties' intent to arbitrate the disputes. The court's decision to proceed with arbitration properly heeds this public policy while preserving Vista's right to sue KCA in court.

To the extent that Vista cites *Volt Info. Scis. v. Bd. of Trs.* (1989) 489 U.S. 468, 479 and *Cronus, supra,* 35 Cal.4th at pp. 380, 387, to support its arguments that the court erred in ordering arbitration and staying litigation, these cases have nothing to do with the exercise of discretion involved in section 1281.2, subdivision (c) that is at issue on appeal. Neither address the court's discretion in choosing between two alternative methods of avoiding inconsistent rulings when the third party exception applies. We thus find Vista's reliance on these cases unavailing.

Based on the foregoing, we conclude that the court did not abuse its discretion in ordering Vista and Bernstein to arbitrate and staying the litigation between Vista and KCA.

### 5. *The Court Properly Confirmed the Arbitration Award*

Lastly, Vista argues that the arbitrator's award must be vacated. However, based on the strong public policy in support of arbitration, courts generally do not review arbitration awards for factual or legal errors (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407 (*Jones*)), including sufficiency of the evidence or reasoning of the arbitrator (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*)). Arbitration awards are usually final. (*Id.* at p. 10.)

Section 1286.2 sets forth limited exceptions to this general rule. Under section 1286.2, a court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).) The "merits" described in this section encompass all contested legal and factual issues before the arbitrator. (*Moncharsh, supra,* 3 Cal.4th at p. 28.) A court must also vacate an award where it was procured by fraud or where the rights of the party were substantially prejudiced by the misconduct of the arbitrator. (§ 1286.2, subds. (a)(1) & (a)(3).)

17

On appeal from a trial court's order granting or denying a request to vacate an arbitration award, our review is de novo. (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1205.) To the extent the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test. (*Ibid.*) When determining whether an arbitrator has exceeded his or her powers, we afford "substantial deference towards the arbitrator's determination of his or her contractual authority. [Citations.]" (*Jones, supra,* 130 Cal.App.4th 401 at p. 408.) "All reasonable inferences must be drawn in support of the award. [Citation.]" (*Ibid.*)

a.      *The Arbitrator's Finding that Bernstein Did Not Misappropriate Trade Secrets Did Not Exceed Its Authority*

Vista asserts that the arbitrator erred in determining that Bernstein did not misappropriate trade secrets because her announcements to the clients regarding her change of employment did not constitute solicitation. (See *Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1524-1525 [acts of solicitation are equated with misappropriation of protected information; informing a former employer's customers of one's change in employment, without more, is not solicitation].) This ruling was clearly within the scope of the arbitrator's power as defined by the employment contract, which stated that "the parties hereto agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by Arbitration . . . ." The language of the arbitration agreement is broad, covering disputes not only arising out of the contract in question but disputes "relating to" the agreement. Under the plain language of the contract, it was within the power of the arbitrator to determine issues relating to trade secrets, as they arose entirely out of Bernstein's employment with Vista and the confidentiality of such information was set forth in the contract.

Vista fails to explain how the arbitrator exceeded his powers in rendering his decision on the trade secret issue. Rather, Vista's arguments deal wholly with the arbitrator's alleged factual or legal errors. As explained above, we will not review

18

arbitration awards, like this one, for factual or legal mistakes. (*Jones, supra,* 130 Cal.App.4th at p. 407.)  We thus affirm the award in this regard.

b.      *The Award Did Not Exceed the Arbitrator's Powers Because It Bears a Rational Relationship to the Contract*

Next, Vista argues that the arbitrator's award exceeded the arbitrator's powers and must be vacated because it is "completely irrational" and "remakes the contract." (Capitalization omitted.)  Specifically, Vista asserts that "the arbitrator irrationally and bizarrely held that despite her patent breach and refusal to honor her obligations under the contract to assist [Vista] in retaining the clients she was servicing for [Vista], Bernstein could do just the opposite because she supposedly had a common law right to send 'announcements' to those clients to induce them to leave [Vista] and follow her to her new employer."  Vista asserts that this decision had no rational relationship to the contract, and had "the effect of completely rewriting the terms of the contract."  Vista relies heavily on *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 592-593, for the proposition that an arbitration award can be set aside if "the application or construction of the contract presents such an egregious mistake that it amounts to an arbitrary remaking of the contract between the parties."

However, the test set forth in *Pacific Gas* is no longer valid.  The "arbitrary remaking of the contract" test has been abrogated by the Supreme Court, in favor of a test which asks whether "the remedy . . . bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367 (*Advanced*).)   In describing the "rational relationship" requirement, the court stated:  "[t]he required link may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent.  [Citation.]  The award must be related in a rational manner to the breach (as expressly or impliedly found

19

by the arbitrator)." (*Id.* at p. 381.) In sum, an award may not be vacated as long as it draws its essence from the contract. (*Ibid.*)

In this case, the arbitration award sets forth the rational relationship between the award, the contract, and the breach. Within the award, the arbitrator notes that Vista had the right of first refusal as to the client list, and that Bernstein anticipatorily refused to honor this right. The arbitrator explained that despite this breach, Vista had no damages. The arbitrator found that, "[t]he problem for Vista is that the legal effect of the 'acquisition' it would have received from Bernstein under the contract, if she had honored the option, would merely be the right to have Bernstein refrain from actively soliciting the 'acquired' clients." The arbitrator stated that because the law "allows a former employee to announce to her former employer's customers her departure and her new place of business," such vanilla announcements, like those at issue here, did not constitute solicitation.

The arbitrator concluded that although it was uncontested that Bernstein sent out an announcement of her change of employment to virtually all of her clients and that many of them followed her to KCA, "Vista must show more than that" to succeed on its claims. Vista needed to show active solicitation by Bernstein. Despite its opportunity and significant efforts to do so, Vista failed to prove that Bernstein engaged in solicitation that would give rise to recoverable damages. Although Vista attempted to prove solicitation in five ways, the arbitrator addressed each of these and explained why Vista's evidence failed to prove active solicitation giving rise to damages.[4]

---

[4]     We note that there was evidence that Bernstein actively solicited one client, who refused to follow Bernstein to KCA. There was no other evidence of active solicitation. The arbitrator concluded that no damages resulted from this solicitation, as the client did not buy insurance from KCA. Moreover, Vista was required to prove that it had more than $200,000 in damages, as Vista was required to pay Bernstein that amount for the "acquisition" of the customer list and the right to prevent Bernstein from soliciting those customers pursuant to the employment contract. Damages from this isolated incident did not rise above $200,000.

20

We conclude that the arbitrator's analysis in the award is firmly grounded in the law, the contract, and the facts of this case. The Supreme Court has held that "[m]erely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee." (*Aetna Bldg. Maintenance Co. v. West* (1952) 39 Cal.2d 198, 204.) The arbitrator interpreted the employment contract in the context of this case law, and deemed Bernstein's vanilla announcements to be insufficient to prove solicitation.

Vista argues that the arbitrator's reasoning has no rational basis because pursuant to the contract, Bernstein had an obligation to assist Vista in retaining those customers' business goodwill and thus contracted away her right to make announcements indicating her change of employment. Yet, the arbitrator disagreed with this interpretation of the contract. The arbitrator expressly stated that it did "not interpret the ambiguous word 'acquire,' as used in this Employment Agreement, to override the right an employee otherwise has to make that announcement [regarding her new place of business]." The arbitrator explained that Vista's option to purchase the client list did not amount to a covenant-not-to-compete, and thus did not require her to refrain from doing business with Vista clients or facilitating their transfer to her new employer. In sum, the arbitrator found that "[o]nce the client itself responds to the neutral announcement by initiating a request to transfer the business, there are then no limits on the broker's ability to take all steps needed to effectuate the [client] transfer."

Vista's disagreement as to how the contract and law should be interpreted fails to show us how the arbitrator exceeded his authority. Simply because Vista disagrees with the arbitrator's interpretation does not make the court's award irrational. Furthermore, "[i]t is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [Citations.] A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers." (*Moncharsh*, *supra*, 3 Cal.4th at p. 28.) Even assuming without deciding the arbitrator's reasoning was

21

erroneous, the award was rationally related to the contact, as the award thoroughly analyzed and interpreted the contractual terms.  It is well established that "[t]he award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is compelled to infer the award was based on an extrinsic source." (*Advanced, supra,* 9 Cal.4th at p. 381, italics omitted.)  We conclude that there is no reason to infer the award was based on an extrinsic source.

To the extent that Vista asserts that the arbitrator should have awarded unjust enrichment because Bernstein breached the option contract by sending announcements of her move to clients, we disagree because the arbitrator expressly found that Vista incurred no damages as a result of a wrongful act by Bernstein and that the contract did not inhibit Bernstein from sending such announcements.  Vista also asserts that at minimum, it should have been awarded at least nominal damages for Bernstein's breach of contract.  Yet, "arbitrators, unless expressly restricted by the agreement of the parties, enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach." (*Advanced, supra,* 9 Cal.4th at p. 383.)  "Were courts to reevaluate independently the merits of a particular remedy, the parties' contractual expectation of a decision according to the arbitrators' best judgment would be defeated." (*Id.* at p. 375.)  The arbitrator exercised its broad discretion in determining not to award any damages to Vista based on what he thought was just and fair.  We will not second guess the arbitrator's best judgment in determining not to award nominal damages.

c.      *The Award Was Not the Product of Fraud or Undue Influence*

Vista asserts that the award should also be vacated because Bernstein procured it by fraud and undue means.  In particular, Vista takes issue with a statement Bernstein made in a posthearing brief, regarding her financial status, to which Vista did not have the opportunity respond.  That statement is:  "In three and a half years of litigation, which has left Bernstein financially devastated, Vista has failed to prove that the customers that followed Bernstein to [KCA] were solicited."  Notably, Vista only takes issue with the first half of that sentence regarding Bernstein being financially devastated by the

22

litigation. Vista asserts that it should have been afforded the opportunity to obtain and present rebuttal evidence regarding this statement. Vista also states that Bernstein's comment "was a blatant attempt to curry sympathy so that the arbitrator would feel sorry for her and not award [Vista] the damages it actually suffered . . . ." (Underscoring omitted.)

We may only vacate an award where there is an occurrence of extrinsic fraud, meaning "conduct which 'results in depriving either of the parties of a fair and impartial hearing to their substantial prejudice.' [Citation.]" (*Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1147.) We begin with the presumption that the arbitrator did not reach the award by fraud, undue means, or corruption. (*Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 833-834.) The burden is on "the moving party . . . to demonstrate a nexus between the award and the alleged undue means used to attain it." (*Id.* at p. 834.)

We conclude that Bernstein's statement does not constitute extrinsic fraud. Bernstein made the statement simply to provide context for the dearth of evidence Vista had regarding solicitation. The statement was minor and innocuous, and was not essential to any legal issue ruled on by the trial court. It was unnecessary for Vista to rebut the remark with evidence, as it appears that Bernstein did not submit evidence of her financial condition to support such a statement. We reason that inclusion of this statement in Bernstein's brief had no risk of depriving Vista of a fair hearing and was highly unlikely to result in any substantial prejudice toward Vista. Furthermore, Vista provides us no evidence of a nexus between the award and this statement. We therefore presume the arbitrator reached its decision without unfairly prejudicing Vista. We thus affirm.

23

## DISPOSITION

Let a writ of mandate issue commanding the Los Angeles County Superior Court to vacate its January 22, 2013 judgment, and enter judgment in favor of Defendant Maureen Bernstein and against Plaintiff Vista International Insurance Brokers as to all legal and equitable claims, except for Defendant Bernstein's claims for attorney fees and costs. The judgment is affirmed on all other grounds. Defendant Maureen Bernstein is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

I concur:

EDMON, P. J.

ALDRICH, J.

24