Filed 10/24/23  Phair v. Renzulli Properties CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JEFF PHAIR et al.,<br><br>     Plaintiffs and Respondents,<br><br>     v.<br><br>RENZULLI PROPERTIES, LLC et al.,<br><br>     Defendant and Appellant. | D081458<br><br><br>(Super. Ct. No. 37-2022-00046736-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Matthew C. Braner, Judge.  Reversed and remanded with instructions.

Pennington Law Firm and Walter Allen Pennington for Defendant and Appellant.

Paul Vincent Carelli IV, Gil Abed and Mark C. Mazzarella for Plaintiffs and Respondents.

This case involves a dispute over the sale of a parcel of real property by defendants Renzulli Properties, LLC and Thomas Renzulli (collectively, Renzulli) to plaintiffs Jeff Phair doing business as the Phair Company, LLC and Green Phair Scripps Partner, LLC (collectively, Phair). As provided for in the purchase and sale agreement (PSA), Phair conducted an extended due diligence review on the property. Before this review was completed, however, the COVID-19 pandemic began, shutting down local government offices including the planning department that issued permits and processed entitlements for the property. Relying on the way the planning department operated *before* the shutdown, the parties agreed to extend escrow until the department "re-opened" for "in-person meetings." But when the planning department changed its procedures, eliminating in-person meetings in most instances, a dispute arose as to whether the department had in fact reopened and therefore whether Phair had to close escrow.

Pursuant to the terms of the PSA, the parties submitted their dispute to arbitration. The arbitrator determined that the department had not "re-opened" because it was closed indefinitely for in-person meetings. At the same time, she found that the parties "did not envision an open-ended COVID Extension." The arbitrator ultimately concluded that the parties intended the extension to last a "reasonable" period of no more than 12 months and directed Phair to close escrow in 30 days or pay damages.

Phair petitioned the trial court to vacate the arbitrator's award, while Renzulli asked to confirm the award. The court ruled that the arbitrator had exceeded her power by violating arbitration rules and reforming the contract outside of Renzulli's arbitration demand. It also found that the award violated fundamental fairness in that Phair did not have adequate notice reformation was sought.

2

On appeal, Renzulli argues the trial court erred in setting aside the arbitration award because an arbitrator is vested with broad discretion to determine the appropriate remedy. Moreover, it is for the arbitrator to determine if notice was adequate and, if not, whether the opposing party suffered any prejudice. We agree on both points, reversing and remanding with directions to confirm the award.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Purchase and Sale Agreement and the COVID Extension*

In March 2018, Renzulli agreed to sell Phair a parcel of real estate in San Diego for approximately $16 million. Their PSA gave Phair an initial due diligence period of six months with three compensated options that could prolong the time to inspect the property by two years. The PSA also had a close of escrow provision, which allowed for 12 consecutive extensions of one month each.

By October 2019, Phair had paid the fees due for the first and second due diligence extensions. The parties then amended the PSA and changed the starting dates for the third due diligence extension and close of escrow extension. Under these amendments, the due diligence period could be extended to February 2021 and the close of escrow could be extended to February 2022. In February 2020, Phair began making $8,000 monthly payments for the third due diligence extension.

In March 2020, the City of San Diego Planning Department closed due to COVID. The parties did not know how long the planning department would be closed, so they amended the PSA's close of escrow extension to address the closure:

"Close of Escrow Extension: Buyer may extend the close of escrow based on the COVID-19 global pandemic impacts on the City of San Diego Planning Department (CSDPD) operations for the time period that the CSDPD has been closed for in person meetings plus an additional two (2) months. This time period shall be calculated based on either a city document or email from the city stating when the CSDPD closed for in person meetings and when they reopened.

"If after the abovementioned COVID-19 extension has been exercised and has expired, the Buyer may further extend the close of escrow for up to twelve (12) one (1) month periods by depositing "good funds" into escrow in the amount of $20,000 per month for each extension period. Each $20,000 deposit shall be immediately released to the Seller each month as a nonrefundable deposit and is NOT applicable to the purchase price, but in addition to."

By December 2020, Phair had paid Renzulli for all three sets of due diligence extensions. The remaining extension was the 12-month close of escrow extension, which would begin once the planning department reopened and the COVID extension expired.

B. *A Dispute Over the COVID Extension*

In February 2022, Renzulli claimed the planning department had opened for in-person meetings as of May 2020 and that escrow would be cancelled if Phair did not start making $20,000 monthly payments. The same month, Phair made a $20,000 payment to escrow without conceding it was due and stating that it was "provisional upon a restructuring of the escrow contract." Phair did not make any subsequent monthly payments.

In April 2022, Renzulli filed an arbitration complaint for breach of contract, cancellation of the contract, specific performance, and contract interpretation, demanding arbitration of the dispute pursuant to the PSA. Renzulli's demand asserted that the planning department reopened for in-

4

person meetings and that all the PSA extensions, including the COVID extension, had expired. It also alleged that Phair exercised the option to extend escrow, made the first $20,000 payment in February 2022, and failed to make the second payment in March 2022. According to the demand, the time to perform had expired and the contract was cancelled.

In the prayer for relief, Renzulli requested that the arbitrator find that Phair breached the contract and that the contract terminated as a result. It also requested "[t]hat the arbitrator determine the rights and obligations of the parties and the performance due" and asked for "[o]ther legal and equitable remedies as determined . . . ."

C. *The Arbitration Award*

Following briefing and a hearing on the merits in October, the arbitrator issued her award in November, 2022. She found that the COVID extension clearly stated that the parties "must rely on a City document or email from the City stating when the [planning department] closed for in-person meetings and when it reopened." While observing that there was undisputed evidence of the planning department's March 2020 closure, there was no notification "directly stating" that it was "open for in-person meetings."

The arbitrator then explained that the planning department was largely conducting its permitting and entitlement processes online and that there was "no indication" it would "be open for regular in-person meetings in the foreseeable future." The parties failed to "anticipate or foresee" that the City would decide to continue conducting the planning department's "business, hearings, and meetings on virtual platforms as the pandemic phase of the COVID crisis subsides," while other public and private entities reopen for in-person events. In agreeing to the COVID extension, the parties

5

"did not intend for the agreed condition to excuse or delay Phair's performance obligation indefinitely." The parties had a "contractual right" to rely on the COVID extension for "a reasonable period." A "reasonable time . . . is a question of fact" that depends on the "situation of the parties, the nature of the transaction, and the facts of the particular case."

The arbitrator found that a "reasonable limitation" on the length of the COVID extension was 12 months based on "the intent of the Parties when they agreed" to the amendment. Because the COVID extension lasted only 12 months after the in-person meetings closed in March 2020, she determined that the COVID extension ended in March 2021. After that date, Phair could pay $20,000 per month for another 12 months if Phair exercised the "Close of Escrow Extensions." Finding it would be "inequitable" to declare a breach retroactively, the arbitrator permitted Phair 30 days to pay Renzulli obligatory fees to cover escrow extension payments from March 2021 to close of escrow and required escrow to close within 30 days of the final award.

D.    *Proceedings in the Superior Court*

Phair filed a petition to set aside the arbitrator's award and Renzulli filed a petition to confirm it. After hearing arguments in December 2022, the trial court issued a ruling declaring that it was "mindful that the scope of judicial review of arbitration awards is extremely narrow," but that an award "must be set aside" when the arbitrator exceeded his or her powers.

The court explained that there were two issues in dispute: (1) whether the planning department "was open for in person meetings, thus triggering expiration of the 'COVID-19 extension' " and a potential breach of contract by Phair for failing to close escrow; and (2) whether Phair had exercised the close of escrow extension in February 2022, thus triggering the obligation to

6

make monthly payments of $20,000. It noted that "[a]bsent from the demand is any indication that [Renzulli] believed tethering the COVID-19 extension to the reopening of in person meetings was unclear, unfair, unreasonable, or unconscionable. It is also undisputed that [Renzulli] did not seek approval to submit any new or different claims" pursuant to the arbitration rules.

The court found that the arbitrator exceeded her powers when she reformed the terms of the COVID-19 extension: "Here, by raising and deciding the issue of the reasonableness of the COVID extension term itself – as opposed to deciding whether in-person meetings had reopened as a factual matter – the arbitrator effectively reformed the contract and in so doing, exceeded her authority." Renzulli's demand for arbitration "did not raise the issue of the reasonableness of the COVID Extension" and "did not seek reformation of the contract."

The court rejected Renzulli's argument that the "demand for arbitration was broad enough to encompass the decision by the arbitrator." It concluded that both the demand for arbitration and the arbitrator's decision clearly set forth the disputed issues," and the arbitrator, in the judge's view, "exceeded her authority by going beyond those issues."

Additionally, Phair did not have "adequate notice and [an] opportunity to respond to the grounds relied on by the arbitrator in her decision." As a result, Phair "was deprived of a fair hearing" and the award had to be vacated "because it was procured by an undue means."

Accordingly, the court granted Phair's petition to set aside the award and denied Renzulli's petition to confirm it.

7

DISCUSSION

Through the California Arbitration Act (Code of Civ. Proc.,[1] § 1280 et seq.), the Legislature has expressed a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) "To promote this alternative means of dispute resolution, the law minimizes judicial intervention in the proceedings, in part, by the doctrine of arbitral finality." (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407.) And while acting in excess of authority is a recognized basis for vacating an arbitration award (§ 1286.2, subd. (a)(4)), this ground is "narrowly construed." (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1138 (*Emerald Aero*).) Parties to an arbitration agreement "have bargained for the relatively free exercise" of the arbitrator's "flexibility, creativity and sense of fairness" in choosing a remedy. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 374 (*Advanced Micro Devices*).) "In determining whether an arbitrator exceeded his [or her] powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority." (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443–444.)

A.  *Reformation Was A Remedy Within the Scope of the Arbitrator's Broad Powers and the Applicable JAMS Rules*

1.  *Arbitrator's Powers*

The trial court found that the arbitrator "exceeded her authority" when she "effectively reformed the contract." "Although 'reformation' is sometimes casually referred to as a cause of action, it is actually a remedy. Reformation

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

8

is not the court *creating a new* agreement but rather *enforcing* the actual agreement *already* made by the parties." (*Panterra GP, Inc. v. Superior Court* (2022) 74 Cal.App.5th 697, 713–714.) An arbitrator's "discretion to determine the extent of remedies is as great as his or her discretion to determine the related question of what issues are necessary to the decision." (*Advanced Micro Devices*, supra, 9 Cal.4th at pp. 374–375 ["Were courts to reevaluate independently the merits of a particular remedy, the parties' contractual expectation of a decision according to the arbitrators' best judgment would be defeated."].)

After hearing evidence and argument, the arbitrator determined there was "nothing in the language of the Second Amendment that envisioned an open-ended COVID Extension. No one anticipated and neither [p]arty assumed the risk that the [the planning department] would pivot to almost exclusively virtual meetings indefinitely." She concluded that the close of escrow condition was "unreasonably open ended" and decided to set "a reasonable date for the expiration of the COVID Extension." The reasonable date was March 15, 2021, based on "the intent of the [p]arties when they agreed" to the extension.

Because arbitrators have broad authority to determine what issues are arbitrable, the trial court was mistaken when it found that the arbitrator "exceeded her authority" when she "rais[ed] and decid[ed] the issue of the reasonableness of the COVID extension term itself—as opposed to deciding whether in person meetings had reopened as a factual matter." The PSA broadly authorized the arbitrator to resolve "[a]ll disputes arising between the Parties with respect to the subject matter of this Agreement." "[W]e defer to the arbitrator's determination as to what issues were arbitrable, and we cannot review that determination on the merits." (*Greenspan v. LADT, LLC*

9

(2010) 185 Cal.App.4th 1413, 1446 (*Greenspan*); see also *Morris v. Zuckerman* (1968) 69 Cal.2d 686, 690 ["It is for the arbitrators to determine which issues were actually 'necessary' to the ultimate decision."]; *East San Bernardino County Water Dist. v. City of San Bernardino* (1973) 33 Cal.App.3d 942, 954 ["The arbitrators, not the courts, have the task of defining the issues between the parties"].)

Here, Renzulli's arbitration demand included the precise language of the COVID extension along with a broadly worded request to interpret it and award all possible legal and equitable remedies.  It set forth Renzulli's belief that the planning department had reopened and that Phair had failed to perform.  Renzulli specifically requested that the arbitrator find that Phair breached the contract and that the contract was terminated because of the breach.  It also raised the question of contract interpretation, asking that the arbitrator determine the " 'rights and obligations under the PSA concerning the performance due from Buyer Phair.' "[2]

Consistent with Renzulli's demand, the arbitrator analyzed the COVID extension.  Although she agreed with Phair as a factual matter that the planning department had not reopened for in-person meetings, she also found that the parties "did not anticipate or foresee the City's decision to continue conducting [planning department] business, hearings, and meetings on virtual platforms as the pandemic phase of the COVID crisis subside[d]."  She further determined that the phrase "in-person meetings" was intended to reference "the test of whether things had returned to normal."

The ruling framed one issue as "whether the condition agreed to in the [COVID extension] was satisfied thus creating Phair's performance obligation

_____

[2]     In the prayer, Renzulli again requested that arbitrator "determine the rights and obligations of the parties and the performance due."

10

– did [the planning department] open for in-person meetings and[,] if so, when?"  In construing the COVID extension, she felt it was necessary to analyze whether the parties "intend[ed] for the agreed condition [of the reopening of the planning department for in-person meetings] to excuse or delay Phair's performance obligation indefinitely."  Her analysis was based on the provision's language and the facts before her regarding the parties' intent.  It was within her authority and discretion to make this determination.  (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal. 4th 1179, 1182 (*Gueyffier*) ["[A]n arbitrator has the authority to . . . interpret the contract, and award any relief rationally related to . . . her factual findings and contractual interpretation."].)

Nor is Phair correct that the arbitrator exceeded her powers by awarding a remedy—reformation of the PSA—that was expressly precluded by the parties' agreement.  Phair suggests that reformation was not a remedy authorized by the PSA, but express authorization is not the issue.  An arbitrator has the power to fashion relief that she considers just and fair so long as the remedy may be "rationally derived" from the contract and the breach.  (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 383.)  The relevant question is whether the arbitration agreement "explicitly and unambiguously limited [the arbitrator's] powers."  (*Gueyffier*, *supra*, 43 Cal.4th at p. 1185.)  Moreover, " 'any doubts as to the meaning or extent of an arbitration agreement are for the arbitrators and not the court to resolve,' " and courts must "refrain from substituting" their own judgment in determining the scope of the arbitrator's powers.  (*Advanced Micro Devices*, at p. 372.)

In *Gueyffier*, for instance, the parties specifically agreed that the arbitrator would have no power to modify or change any term of the contract.  (*Gueyffier*, *supra*, 43 Cal.4th at p. 1185.)  The Supreme Court concluded that

11

while this language would have been effective to bar an actual change or modification, thus preventing reformation of the contract, it did not preclude the arbitrator from excusing performance of a contract term by finding that provision inapplicable. (*Id.* at pp. 1185–1186.) Here, in contrast to *Gueyffier*, there is no language in the parties' agreement that "explicitly and unambiguously" limits available remedies or otherwise prohibits reformation of the PSA.

The trial court's reliance on *Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138 (*Pacific Crown*) was misplaced. In *Pacific Crown*, the parties " 'stipulated the *only* issue submitted to the arbitrator was whether or not the discharge of [the former employee] was in accordance with the collective bargaining agreement, *and if not*, what shall be the remedy.' " (*Id.* at p. 1142.) Based on that stipulation, the Court of Appeal determined that there was "a 'two step process' to be undertaken; first, the arbitrator was to decide whether or not [the former employee's] discharge was in accordance with the collective bargaining agreement, and, *if not*, then a determination of the remedy was to follow." (*Id.* at p. 1144.) To the Court of Appeal, the parties' stipulation seemed "clear enough, the remedy question was to be addressed only if the discharge was not in accord with the agreement." (*Ibid*.) Because the arbitrator determined that the " 'first step' " was fulfilled, the arbitrator should not have proceeded to the " 'remedial step.' " (*Ibid*.) Here, the arbitrator did not violate any similar stipulation or explicit instruction by the parties.

In short, the arbitrator in this case was within her authority to determine the meaning of the COVID extension term and fashion any appropriate remedy that was not expressly precluded by the parties' agreement. (See *Advanced Micro Devices, supra,* 9 Cal.4th at p. 378

[An arbitrator's award will not be overturned " 'as long as the arbitrator is even arguably . . . acting within the scope of his authority' "]; *California Dept. of Human Resources v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 1420, 1430 ["A trial court may vacate an award interpreting a contract if and only if it 'rests on a "completely irrational" construction of the contract [citations] or . . . amounts to an "arbitrary remaking" of the contract.' "].)

### 2. *JAMS Rules*

Phair also contends the arbitrator exceeded her authority because she violated " 'specific restrictions' " in " 'the rules of arbitration.' " According to Phair, the arbitrator's authority was limited by the JAMS arbitration rules, "which became part of the . . . Arbitration agreement, and which provide the Arbitrator was not to consider any issue not alleged in Renzulli's Demand for Arbitration and Complaint."[3] In accepting this argument, the trial court

---

[3] According to the arbitration ruling, all parties agreed "that the arbitration will be governed by the JAMS Comprehensive Arbitration Rules and Procedures (JAMS Rules)." The record does not include a written agreement to be governed by the JAMS Rules. The full, up-to-date text of those rules is available on the JAMS website at <https://www.jamsadr.com/rules-comprehensive-arbitration/> archived at <https://perma.cc/2F9B-VDCT> (as of Oct. 24, 2023). Having given the parties appropriate notice before oral argument that we proposed to take judicial notice of the rules on our own motion (Evid. Code, § 459, subds. (c) & (d)), we now do take judicial notice of the JAMS Rules, effective June 1, 2021. (See Evid. Code, § 452, subd. (h) [permitting judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"]; *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 6, fn. 1 [noticing JAMS Rules]; *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505, fn. 6 [noticing American Arbitration Association's commercial arbitration rules].)

13

mistakenly emphasized JAMS Rule 9(a) to the exclusion of other provisions in the rules.  JAMS Rule 9 is entitled, "Notice of Claims."  Subdivision (a) begins by requiring each party to "afford all other Parties reasonable and timely notice of its claims."  It further provides that "[n]o claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator" without prior notice to the other parties or a determination that no party would be prejudiced without such notice.[4]  Thus, the rule is not so much a limitation on the arbitrator's authority as it is an obligation imposed on *the parties* to provide reasonable notice of their claims. It does not further define what is "reasonable," and it specifically permits the arbitrator to consider an issue if she determines that no party has been prejudiced by the lack of notice.  For that same reason, *Emerald Aero*, *supra*, 9 Cal.App.5th 1125, on which Phair relies on, is distinguishable.  In that case, the plaintiffs gave notice of their new claim for punitive damages within 24 hours of the arbitration hearing.  (*Id*. at p. 1141.)  The Court of Appeal found that this was inadequate notice under the arbitration rules.  (*Ibid*.)

In focusing on JAMS Rule 9(a), the trial court failed to acknowledge the arbitrator's expansive authority under the JAMS Rules to "grant any remedy or relief that is just and equitable."  (*Id.,* Rule 24(c).)  JAMS Rule 24(c), is nearly identical to the arbitration rule analyzed in *Advanced Micro Devices*, which the Supreme Court said did not indicate any intent "to place any

---

4    JAMS Rule 9(a) provides:  "Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims.  Any such notice shall include a short statement of its factual basis.  No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice."

14

special restrictions on the arbitrator's discretion to fashion remedies." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 384.) As such, an arbitrator's award is within the arbitrator's broad equitable powers if it is "even arguably based on the contract." (*Id*. at p. 381.)

It is true that JAMS Rule 9(a) restricts an arbitrator to awarding remedies that have been the subject of proper notice, but it is for the *arbitrator* to decide whether notice was adequate or otherwise excused. We have no way of knowing what was discussed with counsel during argument and what might have led the arbitrator to conclude the parties should have been aware reformation was being considered. Moreover, the JAMS Rules give the arbitrator wide discretion to interpret and apply the rules themselves. JAMS Rule 11(a) provides that the arbitrator "shall resolve *disputes* about the *interpretation and applicability of these Rules* and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be *final*." (See *Greenspan, supra,* 185 Cal.App.4th at p. 1455 ["Under JAMS Rule 11(a), the arbitrator's interpretation and application of the Rules is final. We therefore defer to the arbitrator's decision that the Rules permitted him to render the awards in the manner . . . he chose."].) In short, it was for the arbitrator to determine whether Phair received reasonable notice that reformation was a possibility and, if not, whether it was prejudiced by the lack of notice. The arbitrator did not exceed her powers by concluding that reformation was appropriate on the facts of this case.

B.  *The Arbitrator Did Not Commit Fraud or Violate Phair's Due Process Rights*

Sounding a related theme, Phair argues that the arbitrator committed "extrinsic fraud" and violated its due process right to a fair hearing by

15

granting reformation of the contract without proper notice. (§ 1286.2, subd. (a)(1).) As we have already explained, however, the arbitrator had the authority to determine whether the issue of reformation was raised with adequate notice.

Moreover, although "arbitration procedures that interfere with a party's right to a fair hearing are reviewable on appeal" (*Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 888), a party must show prejudice to have an award set aside. (*Government Employees Ins. Co. v. Brunner* (1961) 191 Cal.App.2d 334, 337 ["To justify the setting aside of the award on account of error it must be shown that the rights of one of the parties is prejudiced by the award."]; see also § 1286.2, subd. (a)(3) & (a)(5) [showing of prejudice required to vacate award].) The "prejudice query . . . is an examination of the proffered but rejected evidence to determine the impact of its omission under the theory adopted by the arbitrators." (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1109.)

Here, Phair complains the arbitrator went outside the record and considered evidence she obtained from the City planning department's website. It further asserts that had it known the arbitrator was contemplating reformation of the contract, it would have sought to introduce additional evidence as to *when* the planning department might reopen for in-person meetings.

We reject the suggestion that the arbitrator obtained and considered extra-record evidence that Phair never had an opportunity to address. (See § 1282.2, subd. (g) [disclosure is required if arbitrator "intends to base an award upon information not obtained at the hearing"].) Phair's appellate counsel emphasized this contention at oral argument, asserting that the arbitrator independently reviewed the planning department's website.

16

But Phair had directed the arbitrator to that website when it requested judicial notice of its content, including the services that were available for in-person appointments. As such, Phair cannot now claim prejudice. (*Canadian Indem. Co. v. Ohm* (1969) 271 Cal.App.2d 703, 708 [violation of section 1282.2, subdivision (g) requires showing that "the rights of the complaining party were substantially prejudiced"].)

Moreover, the record is devoid of any indication that Phair has ever identified—for the arbitrator, the trial court, or this court—what specific additional evidence it would have presented had it received what it believed was adequate notice that reformation was being considered. And even if there *was* evidence available at the time of the arbitration as to when the planning department might reopen, the arbitrator had already determined that the parties did not intend the COVID extension to last more than *one year* from the date of the initial planning department closure in March 2020. When the arbitration was conducted in October 2022, the planning department had been closed for nearly *three* years, and evidence of a future planned reopening would have had no effect on the arbitrator's conclusion.

Whether reformation was appropriate was a judgment call for the arbitrator based on the circumstances of the case that were fully litigated by the parties. We have no reason to believe there was any additional evidence that would have led the arbitrator to make a different award. (See *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 439 ["To find substantial prejudice the court must . . . conclude that the arbitrator might well have made a different award had the evidence been allowed."].)

Phair argues that its "due process rights" were violated "similarly" to the violations discussed in *Pacific Crown, supra,* 183 Cal.App.3d 1138. But Phair's allegations are nothing like the allegations there. In *Pacific Crown,*

17

despite the parties' "mutual agreement . . . stating that section 9.2(1) [of a new collective bargaining agreement] would not be raised in the arbitration hearing" (*Pacific Crown,* at p. 1144), one of the parties argued the point in its posthearing brief and the arbitrator's decision ultimately concluded that the provision had been violated.  The Court of Appeal upheld the trial court's finding that "the arbitrator's award was procured by fraud, corruption and undue means," accepting the argument that the "*appellant* violated the parties' agreement . . . and 'deprived [respondent] of an opportunity to present evidence.' "[5]  (*Pacific Crown*, at p. 1146, italics added.)   In contrast to *Pacific Crown*, there are no allegations that Renzulli took any action to deceive Phair.

In short, reforming the contract to include a reasonable date for the expiration of the COVID extension did not "constitute misconduct [n]or [was it] so profound as to render the process unfair." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368.)  The court, therefore, erred when it granted Phair's petition to vacate the arbitration award. Because the arbitrator here

---

[5]    In *Pacific Crown,* the record included a transcript of the arbitration hearing.  (183 Cal.App.3d at p. 1148, fn. 7.)  The Court of Appeal concluded that "[t]he record can support no other conclusion than that reached by the trial court when it found '[by] asserting [the section 9.2(1) [of a new collective bargaining agreement] issue] for the first time in its posthearing brief [appellant] intentionally and fraudulently deprived [respondent] of its opportunity to present evidence in arbitration concerning the nonexistence of section 9.2(1) on the date of [the former employee's] discharge.' " (*Pacific Crown,* at p. 1149.)  The "impropriety" of appellant's conduct was "apparent in the record when, in a . . .  meeting between the parties, respondent protested inclusion of section 9.2(1) in appellant's brief.  Appellant responded, " 'I lived up to my word and we did not bring it up in the hearing. . . .  I can't control what my attorney does.'  With such evidence in the record we find the trial court's finding of intentional fraud justified." (*Pacific Crown,* at p. 1149, fn. 10.)

18

was at least "arguably . . . acting within the scope of [her] authority" (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 378), we reverse the court's order and remand with directions to confirm the arbitration award.

## DISPOSITION

The trial court's order is reversed.  The matter is remanded with directions to the trial court to confirm the arbitration award and enter judgment in favor of Renzulli, who is entitled to recover costs on appeal.


DATO, Acting P. J.

WE CONCUR:


DO, J.


KELETY, J.

19